# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF RHODE ISLAND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>Defendants. | Case No. 1:25-cv-00439-MSM-PAS |

**FEDERAL DEFENDANTS' MOTION TO TRANSFER VENUE**

# INTRODUCTION

Connecticut and Rhode Island's lawsuit belongs in the District of Columbia. The States challenge a stop-work order ("Order") issued by the Bureau of Ocean Energy Management ("BOEM") to Revolution Wind, LLC. But Revolution Wind sued to challenge the same Order in the U.S. District Court for the District of Columbia ("D.D.C.") on largely the same grounds as the States. Revolution Wind moved for preliminary injunctive relief in that case a week and a half ago. Revolution Wind's preliminary injunction motion will be fully briefed on September 18, and the court scheduled a hearing September 22. Not only that, but several other cases brought by project opponents in the last two years challenging federal approvals associated with *the same project* are pending in D.D.C., so that court is already familiar with the Revolution Wind Project's background. Given the significant overlap between Revolution Wind and the States' claims and requested relief, as well as D.D.C.'s existing familiarity with the Project and the issues raised in the States' complaint, this Court should transfer this case to D.D.C. *See* 28 U.S.C. § 1404(a). Judicial economy and avoiding inconsistent judgments strongly favor transfer and outweigh any competing interest in proceeding in this District.

# BACKGROUND

### A. Legal and Factual Background

The Outer Continental Shelf Lands Act ("OCSLA") authorizes the Secretary of the Interior to lease portions of the Outer Continental Shelf ("OCS") for oil and gas production, and to support energy production "from sources other than oil and gas," such as wind. 43 U.S.C. § 1337(p)(1)(C). OCSLA requires the Secretary to consult with other federal departments and agencies when exercising this authority, *id.* § 1337(p)(1), and it directs the Secretary to "ensure that any activity" occurring under OCSLA "is carried out in a manner that provides for … protection of national

1

security interests," and "prevention of interference with reasonable uses" of the OCS. *Id.* § 1337(p)(4). BOEM is the agency within the Department of the Interior ("Interior") that exercises this leasing authority by delegation from the Secretary. *See* 30 C.F.R. § 585.102(a). Under BOEM's renewable energy regulations and lease terms, a lease issued under OCSLA does not itself authorize development. 30 C.F.R. § 585.200(a). A lessee must first assess the site, obtain BOEM's approval of a site assessment plan, and obtain BOEM's approval of a Construction and Operations Plan ("COP"). 30 C.F.R. §§ 585.600, 585.605–585.613, 585.620–585.628.

The Revolution Wind Farm and Revolution Wind Export Cable Project ("Project") is an offshore wind energy project that has been under construction in federal waters off the coast of Rhode Island. In 2013, BOEM awarded Revolution Wind's predecessor entity a lease on an area off the southern coast of New England. Record of Decision: Revolution Wind Farm & Revolution Wind Export Cable Project Construction & Operations Plan 3 (Aug. 21, 2023) ("ROD") (attached as Ex. 1). Revolution Wind submitted an initial COP for the Project to BOEM in 2020, and later submitted updated versions of the COP. *Id.* at 3-4. BOEM issued a Record of Decision to approve the COP with modifications in August 2023 and sent Revolution Wind a letter of approval in November 2023. *See generally id.*; Letter from Karen Baker, Off. of Renewable Energy Programs, BOEM, to Peter Allen, Revolution Wind, LLC (Nov. 17, 2023) (attached as Ex. 2). The COP, as approved, contemplates construction of up to 65 wind turbine generators and associated onshore and offshore infrastructure. ROD 22.

Litigation soon followed. In November 2023, two Rhode Island-based organizations sued challenging the approval of the COP in D.D.C. *See* Compl. for Declaratory & Injunctive Relief, *Pres. Soc'y of Newport Cnty. v. Haaland*, No. 1:23-cv-03513-RCL (D.D.C. Nov. 22, 2023); Compl. for Declaratory & Injunctive Relief, *Se. Lighthouse Found. v. Haaland*, No. 1:23-cv-03515-RCL

(D.D.C. Nov. 22, 2023). Those cases were consolidated before the Hon. Royce C. Lamberth. Order Granting Mot. to Consolidate, *Pres. Soc'y of Newport Cnty.* Dkt. No. 20 (Dec. 21, 2023). A third case challenging BOEM's approval of the COP (among other federal approvals associated with the project) was designated as a related case and also assigned to Judge Lamberth. *See* Compl. to Reverse & Set Aside Final Agency Action, *Green Oceans v. U.S. Dep't of the Interior*, No. 1:24-cv-00141-RCL (D.D.C. Jan. 16, 2024); Notice of Related Case, *Green Oceans* Dkt. No. 5 (Jan. 18, 2024); *see also* Second Am. Compl. to Reverse & Set Aside Final Agency Action, *Green Oceans* Dkt. No. 82 (July 15, 2025) (operative complaint). All three cases argue that BOEM's approval of the COP was unlawful and arbitrary and capricious and should be set aside under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).

On January 20, 2025, with these lawsuits still pending, the President issued a Memorandum instructing the Secretary of the Interior to "conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases[.]" *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects*, 90 Fed. Reg. 8363 (Jan. 20, 2025) ("Presidential Wind Memo"). And in May 2025, Interior withdrew one M-Opinion and reinstated a prior M-Opinion interpreting the scope of the Secretary's authority under OCSLA. *See* M-Opinion 37086 (attached as Ex. 3).[1] BOEM relied on the prior (now-rescinded) M-Opinion in approving the COP. ROD 5-6, B-2 & n.1. The May 2025 M-Opinion instructs that "any [ ] Departmental action taken in reliance" on that earlier M-Opinion "should be re-evaluated[.]" M-Opinion 37086 at 3.

---

[1] M-Opinions are legal interpretations by Interior that are binding on all Departmental offices and officials. They can only be overruled or modified by the Interior Solicitor, Deputy Secretary, or Secretary. 209 Interior Departmental Manual 3.2(A)(11).

3

In accordance with the Presidential Wind Memo and May 2025 M-Opinion, Interior is reviewing BOEM's approval of Revolution Wind's COP. During that review, Interior identified "concerns … related to the protection of national security interests of the United States and prevention of interference with reasonable uses of the exclusive economic zone, the high seas, and the territorial seas, as described in [ ] subsection [1337(p)(4)] of OCSLA." Order, Dkt. No. 1-1. On August 22, BOEM issued an order directing Revolution Wind to "halt all ongoing activities related to the Revolution Wind Project on the outer continental shelf [ ] to allow time for [BOEM] to address" those concerns. *Id*. Revolution Wind "may not resume activities until BOEM informs [it] that BOEM has completed its necessary review." *Id*.

### B. Procedural Background

On September 4, 2025, Revolution Wind sued in D.D.C., challenging the stop-work order under the APA. *See* Compl. for Declaratory & Injunctive Relief, *Revolution Wind, LLC v. Burgum*, No. 1:25-cv-02999-RCL (D.D.C. Sept. 4, 2025), Dkt. No. 1 ("Revolution Wind Compl."). Revolution Wind designated its case as related to *Preservation Society of Newport County*, *Southeast Lighthouse Foundation*, and *Green Oceans*, and the case was assigned to the same judge (Judge Lamberth). Notice of Related Case, *Revolution Wind* Dkt. No. 2 (Sept. 4, 2025). The next day, Revolution Wind moved for a preliminary injunction. Pl.'s Mot. for Prelim. Inj. & Stay Pending Review, *Revolution Wind* Dkt. No. 9 (Sept. 5, 2025). Revolution Wind requested a ruling on its preliminary injunction motion by September 22. *Id*. Revolution Wind's reply in support of its motion is due September 18, and the court has scheduled a hearing for the morning of September 22. Min. Order, *Revolution Wind* (Sept. 16, 2025).

The States sued on the same day as Revolution Wind, but in this District. Like Revolution Wind, the States seek to invalidate the August 22 Order under the APA. *See* Compl. for Declaratory

4

& Injunctive Relief ¶¶ 131-180, Prayer for Relief, Dkt. No. 1 ("States' Compl."). On September 16, Federal Defendants' counsel informed the States' counsel of Federal Defendants' intent to move to transfer the case to D.D.C. to join Revolution Wind's case. The next day, the States filed their own motion for preliminary injunctive relief. Mot. for Prelim. Inj., Dkt. No. 21. The States' motion relies, in part, on the same factual evidence Revolution Wind has presented to Judge Lamberth in support of the company's preliminary injunction motion. *See* Ex. 3 to Mot. for Prelim. Inj., Dkt. No. 21- 3. The States oppose the transfer of venue. Federal Defendants thus expeditiously move to transfer this case to D.D.C. to ensure the two cases can be litigated efficiently and to avoid inconsistent judgments on the same set of facts and issues.

## LEGAL STANDARD

Under 28 U.S.C. § 1404(a), the Court may transfer a civil action to another district "[f]or the convenience of parties and witnesses, in the interest of justice," if the district is one where the action "might have been brought[.]" The purpose of the transfer statute is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *World Energy Alts., LLC v. Settlemyre Indus., Inc.*, 671 F. Supp. 2d 215, 217 (D. Mass. 2009) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). The statute is also intended to prevent forum-shopping. *See Schmid Lab'ys, Inc. v. Hartford Accident & Indem. Co.*, 654 F. Supp. 734, 737 (D.D.C. 1986); *Dress v. Cap. One Bank (USA), N.A.*, 368 F. Supp. 3d 178, 184 (D. Mass. 2019) (same).

In ruling on a motion to transfer venue under § 1404(a), a court must first determine whether the action could have been brought in the transferee district. If this threshold issue is answered in the affirmative, courts conduct an "individualized, case-by-case consideration of convenience and fairness." *Tristar Prods., Inc. v. Novel Brands, LLC*, 267 F. Supp. 3d 380, 382 (D.R.I.

5

2017) (quoting *Main St. NA Parkade, LLC v. Sleepy's, LLC*, No. CA-13-593-S, 2014 WL 652313, at *1 (D.R.I. Feb. 19, 2014)). "To make that determination, the Court must look to both private and public interest factors to determine if transfer is appropriate." *Id.* The factors include:

> (1) ease of access to sources of proof; (2) availability of compulsory process to compel attendance of witnesses; (3) cost of attendance of willing witnesses; (4) ease of a view of premises, if necessary; (5) enforceability of the judgment, if obtained; (6) advantages and obstacles to a fair trial; (7) status of the court's trial calendar; and (8) familiarity of forum with applicable state law.

*Id.* The First Circuit has also recognized "the possibility of consolidation" and pendency of related litigation as a factor to consider in deciding a motion to transfer. *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000).

## **ARGUMENT**

This case belongs in D.D.C. The States could have brought this case in D.D.C., and the interests of justice are best served by transfer to a venue that would allow this case to be consolidated with Revolution Wind's case. Judicial economy and the need to avoid conflicting judgments outweighs the States' preference for venue in this District.

### I.     The States Could Have Brought Suit in D.D.C.

The threshold requirement for transfer under 28 U.S.C. § 1404(a) is that the proposed transferee forum be a "district or division where [the case] might have been brought[.]" This case could have been brought in D.D.C. because the Secretary of the Interior and other federal defendants reside in the District of Columbia. 28 U.S.C. § 1391(e)(1). Several other cases involving federal actions relating to the Revolution Wind Project are pending in D.D.C.

### II.    The Public Interest Factors Favor Transfer.

In weighing the interests of justice under 28 U.S.C. § 1404(a), courts consider "public factors," such as judicial economy, the transferee court's "familiarity with the governing law, the local interest in deciding local controversies at home, and the relative congestion of the courts." *See*

6

*Johnson v. VCG Holding Corp.*, 767 F. Supp. 2d 208, 212 (D. Me. 2011) (quoting 15 Wright, Miller & Cooper, Fed. Prac. & Proc. § 3847 (4th ed. 2007) ("Wright & Miller")). "Many federal courts consider the interest of justice to be 'decisive—outweighing the other statutory factors—in ruling on a change of venue motion even though the convenience of the parties and witnesses pointed in a different direction.'" *Falafel Republic Mediterranean Foods, Inc. v. Tarazi Specialty Foods, Inc.*, No. 12-10551-NMG, 2012 WL 12941889, at *13 (D. Mass. Sept. 28, 2012) (quoting Wright & Miller § 3847), *R&R adopted*, 2012 WL 13059891 (D. Mass. Nov. 21, 2012).

A. **Judicial Economy and the Risk of Inconsistent Judgments Strongly Favor Transfer.**

The interest of judicial economy and risk of inconsistent judgments heavily favors transferring this case to the D.D.C., where it can be consolidated with Revolution Wind's case and assigned to the same court that has been presiding over challenges to BOEM's approval of Revolution Wind's COP since 2023. *See Wiley v. Gerber Prods. Co.*, 667 F. Supp. 2d 171, 173 (D. Mass. 2009) (the court "can and should consider consolidation in its decision to transfer"); *see also, e.g.*, *Kinsella v. Bureau of Ocean Energy Mgmt.*, No. 22-cv-2147, 2022 WL 16852674, at *3 (D.D.C. Nov. 10, 2022) (transferring lawsuit challenging BOEM's approval of wind-energy facility to district with a pending lawsuit challenging the same approval); *Seafreeze Shoreside Inc. v. U.S. Dep't of the Interior*, Nos. 21-cv-3276, 22-cv-237, 2022 WL 3906934, at *6 (D.D.C. June 27, 2022) (same). Both Revolution Wind and the States allege that: (1) the stop-work Order was arbitrary and capricious, States' Compl. ¶¶ 131-153, Revolution Wind Compl. ¶¶ 160-180; (2) BOEM lacked authority to issue the Order under OCSLA, States' Comp. ¶¶ 154-167, Revolution Wind Compl. ¶¶ 181-191; and (3) BOEM did not follow procedures required by OCSLA, States' Compl. ¶¶ 177-178, Revolution Wind Compl. ¶¶ 192-200. And both Revolution Wind and

7

the States seek vacatur of the Order.  States' Compl., Prayer for Relief; Revolution Wind Compl., Prayer for Relief.

Proceeding in two districts on these substantially overlapping, if not identical, claims would result in "duplicative litigation and a waste of judicial resources[.]" *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987).  "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. FBL-585*, 364 U.S. 19, 26 (1960).  Thus, "the presence of closely related litigation" in the proposed transferee district can be "the most significant factor weighing in favor of transferring [a] case[.]" *FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 29 (D.D.C. 2008) (first alteration in original) (quoting *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 180 (D.D.C. 2007)).  On top of the inefficiency inherent in having two districts consider and decide the same issue, it would waste party resources to prepare potentially duplicative briefing in two courts.  Transfer would prevent the waste of "time, energy and money" by all involved. *Cont'l Grain*, 364 U.S. at 26.

The same rationale favoring transfer to a district with an earlier-filed case applies here, and judicial economy would be best served by transferring the States' case to D.D.C. rather than seeking to transfer Revolution Wind's case here.  The preference for transferring later-filed cases to the district with a first-filed case "involving similar issues and facts" is based on "that court's familiarity with the facts of the case and the applicable law[.]" *MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, No. 18-cv-830-JL, 2019 WL 1300860, at *5 (D.N.H. Mar. 21, 2019) (internal quotation omitted).  While Revolution Wind and the States filed their complaints on the same day, D.D.C. has already begun familiarizing itself with the same issues presented in the States' case through Revolution Wind's preliminary injunction motion filed a week and half before the States'

8

motion. *See Kinsella*, 2022 WL 16852674, at *3 (citing the fact that "the transferee court ha[d] already … considered a motion for a preliminary injunction" as supporting transfer); *Stand Up for California! v. U.S. Dep't of the Interior*, 919 F. Supp. 2d 51, 65 n.16 (D.D.C. 2013) (citing court's own familiarity with case gained through proceedings on an emergency motion as a reason to not transfer case). Further, D.D.C. already has familiarity with the Revolution Wind Project through the three prior cases challenging the COP approval, which, since November 2023, have collectively involved cross-motions for summary judgment, a motion to dismiss, and two motions for emergency injunctive relief. *See Pres. Soc'y of Newport Cnty.* Dkt. Nos. 44, 47-52, 55, 57 (fully briefed motions for summary judgment); *Green Oceans* Dkt. Nos. 53, 66, 67-69 (briefing and ruling on motion to dismiss); *Green Oceans* Dkt. Nos. 26, 28-32, 35, 37-39, 43-50 (briefing and rulings on motions for emergency relief).

  The significant overlap between the States' claims and Revolution Wind's claims in D.D.C. also presents a significant risk of inconsistent judgments. This case and Revolution Wind's both challenge the same agency action—the stop-work order—and seek the same relief. States' Compl., Prayer for Relief; Revolution Wind Compl., Prayer for Relief. If D.D.C. and this Court issue conflicting judgments, Interior would be subject to contradictory outcomes. Thus, "the interests of judicial economy and in avoiding inconsistent judgments weigh heavily in favor of transferring this action" to D.D.C. *Ridenti v. Google LLC*, 530 F. Supp. 3d 164, 168 (D. Mass. 2021).

  A ruling in the States' case would also impact Revolution Wind, potentially presenting other problems with proceeding in this district. The States challenge—and seek relief related to—a stop-work order directed at a private company. But that company is not a party to this case. Thus, as it presently stands, there are potential issues related to relief. Revolution Wind could be joined as a plaintiff under Rule 19(a). But given the company's pending case in D.D.C., its joinder

9

as a plaintiff here could present a claim splitting issue. *Laccinole v. Diversified Consultants, Inc.*, No. 1:19-cv-00149-MSM-LDA, 2020 WL 1862969, at *2-3 (D.R.I. Apr. 14, 2020) (a "litigant with multiple related claims must not separate, or split, the claims into multiple, successive cases, but must include in the first action all of the claims that fall within the Court's jurisdiction" (quoting *Perry v. Alexander*, No. 2:15-cv-00310-JCN, 2017 WL 3084387, at *3 (D. Me. July 19, 2017))). These concerns evaporate if the States' case is transferred to D.D.C. to be consolidated with Revolution Wind's pending case.

### B. The Relative Congestion of This Court Favors Transfer

The relative congestion of this district compared to D.D.C. marginally favors transfer. "Factors relevant to the public interest include … the administrative difficulties of docket congestion[.]" *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000). As of March 31, D.D.C. had more pending civil cases (5,243) than this District (658). Table C-1—U.S. District Courts–Civil Federal Judicial Caseload Statistics, U.S. Courts (Mar. 31, 2025) https://www.uscourts.gov/data-news/data-tables/2025/03/31/federal-judicial-caseload-statistics/c-1 (Excel file). But the median time of disposition for civil cases is shorter in D.D.C. (7.3 months) than in this Court (8.6 months). Table C-5—U.S. District Courts–Civil Federal Judicial Caseload Statistics, U.S. Courts (Mar. 31, 2025) https://www.uscourts.gov/data-news/data-tables/2025/03/31/federal-judicial-caseload-statistics/c-5 (Excel file). Thus, relative court congestion tilts in favor of transfer.

### C. Local Interest in this Suit does Not Outweigh the Other Public Interest Factors Favoring Transfer.

While there is a public interest "in having localized controversies decided at home," *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947), that interest does not outweigh the other public interest considerations discussed above. Rhode Island could reasonably argue that it has a local interest in proceeding in the District of Rhode Island. But Connecticut does not have a strong local

10

interest in proceeding in the District of Rhode Island.  And the weight of the local interest in having this case decided in Rhode Island is "diminished" by the fact that Revolution Wind—the project developer and party most directly impacted by the stop-work order—sued in D.D.C., not in Rhode Island.  *See Stand Up for California!*, 919 F. Supp. 2d at 65 (finding that "the local interest in having localized controversies decided at home [was] diminished" because both the "local interests most vocally opposed to the [challenged] trust transfer (the plaintiffs) as well as the local interest most interested in seeing the transfer upheld … [were] all opposed to transfer").  And other parties opposed to the Revolution Wind Project have thus far all sued in D.D.C.  *See id.*; *supra* pp. 2-3.  Thus, there is not a strong enough local interest in proceeding in Rhode Island that weighs against transfer.  Any local interest in proceeding here does not outweigh the inefficiencies of litigating nearly identical cases in different districts or the significant risk of inconsistent judgments.

### III.     The Private Factors Are Neutral.

The "private" factors considered under 28 U.S.C. § 1404(a) include the convenience of the parties and witnesses, "but also often include the plaintiffs' forum preference, where the claim arose, and the relative ease of access to sources of proof." *Johnson*, 767 F. Supp. 2d at 212 (quoting Wright & Miller § 3847).  In cases brought under the APA, where the claims are decided on the administrative record without a trial, "neither the convenience of the parties and witnesses nor the ease of access to sources of proof weighs heavily in the [venue] analysis." *Narragansett Indian Tribe v. Hendrickson*, No. 1:19-cv-00158-MSM-PAS, 2020 WL 65087, at *1 (D.R.I. Jan. 7, 2020) (alteration in original) (quoting *Ysleta del Sur Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 42 (D.D.C. 2010)); *see also Little Bay Lobster Co. v. Daley*, No. CIV. 00-007-M, 2001 WL 274797, at *3 (D.N.H. Jan. 12, 2001) (similar).

11

While a plaintiff's choice of forum is typically entitled to significant weight in the transfer analysis, it does not justify denying transfer here. A plaintiff's choice of forum can be overcome when other factors "clearly point" toward venue in another forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); *see also Royal Bed & Spring Co., Inc. v. Famoussul Industria e Comercio de Moveis Ltda.*, 906 F.2d 45, 52 (1st Cir. 1990). Ultimately, "the weight accorded to a plaintiff's choice of forum varies with the circumstances of the case," and the circumstances of this case warrant transfer to D.D.C. *Johnson v. N.Y. Life Ins. Co.*, No. 12-11026-MLW, 2013 WL 1003432, at *3 (D. Mass. Mar. 14, 2013).

The deference afforded to a plaintiff's home forum assumes that a plaintiff will choose the most convenient forum. *See Piper Aircraft*, 454 U.S. at 255-56 (when plaintiff has chosen venue in its home forum, "it is reasonable to assume that this choice is convenient" for the plaintiff). While that assumption may be true here for Rhode Island, it is not necessarily true for Connecticut, or its Commissioner. Moreover, any allegations by the States that they will be inconvenienced by litigating this case outside the District of Rhode Island must be taken with a grain of salt. The States are sophisticated parties with competent counsel, and both have joined lawsuits brought under the APA as plaintiffs outside their respective home forums. *See, e.g.*, *Connecticut v. U.S. Dep't of the Interior*, 363 F. Supp. 3d 45 (D.D.C. 2019); Compl. for Declaratory & Injunctive Relief, *New York v. Trump*, No. 1:25-cv-11221 (D. Mass. May 5, 2025), Dkt. No. 1 (Rhode Island and Connecticut as co-plaintiffs). Further, because this suit is brought under the APA, the States' claims will be decided on cross-motions for summary judgment based on an administrative record, and court appearances, if any, are likely to be infrequent. *See, e.g.*, *Ace Lobster Co., Inc. v. Evans*, 165 F. Supp. 2d 148 (D.R.I. 2001) (deciding APA claims on cross-motions for summary judgment). Rhode Island's selection of its home forum thus only weakly corresponds to "the convenience of

12

parties and witnesses," 28 U.S.C. § 1404(a). This weak tie to the convenience of the parties is heavily outweighed by the considerations of judicial economy and risk of inconsistent judgments discussed above. *See supra* pp. 7-10.

## CONCLUSION

For the foregoing reasons, this action should be transferred to the United States District Court for the District of Columbia.

Dated: September 17, 2025

Respectfully submitted,

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources Division

PETER M. TORSTENSEN, JR.
Deputy Assistant Attorney General
Environment & Natural Resources Division

*s/ Kristofor R. Swanson*
KRISTOFOR R. SWANSON
(Colo. Bar No. 39378)
AMANDA K. RUDAT
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
(202) 598-1937 (Swanson)
(202) 532-3201 (Rudat)
kristofor.swanson@usdoj.gov
amanda.rudat@usdoj.gov

*Attorneys for Federal Defendants*

13