**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF RHODE ISLAND et al., | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) C.A. No. 1:25-cv-00439 |
| | ) |
| UNITED STATES DEPARTMENT OF | ) Hon. Mary S. McElroy |
| THE INTERIOR et al., | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF GREEN OCEANS'
MOTION TO INTERVENE AS DEFENDANT**

**Table of Contents**

Table of Authorities...................................................................................................... iii

Table of Exhibits ......................................................................................................... vi

Glossary ....................................................................................................................... vii

Factual Background ...................................................................................................... 2

    1.   Department of Interior's Recent Repudiation of the Statutory Interpretation Used to Approve the Project ............................................................................................... 3

    2.   Green Oceans' Interests ...................................................................................... 6

Standard of Review ...................................................................................................... 7

Argument ...................................................................................................................... 8

    1.   Green Oceans Has Legally Protected Interests and Is Entitled to Intervene as of Right.... 8

        A.   Green Oceans Has Standing........................................................................ 9

        B.   Green Oceans' Motion Is Timely .............................................................. 12

        C.   Green Oceans Has Concrete Interests Relating To This Pending Action ..................... 13

        D.   An Adverse Decision Will Substantially Impair Green Oceans' Legally Protected Interests ............................................................................................... 15

        E.   The Government Does Not Adequately Represent Green Oceans' Interests in This Case…................................................................................................. 16

    2.   In the Alternative, the Court Should Grant Permissive Intervention ................................ 18

    3.   Green Oceans Should Be Permitted to File Its Answer by the Same Deadline as Federal Defendants ...................................................................................................... 20

Conclusion .................................................................................................................... 21

**Table of Authorities**

**Cases**

*Am. Anti-Vivisection Soc'y v. United States Dep't of Agric.*,
  946 F.3d 615 (D.C. Cir. 2020)............................................................................... 10

*Aristotle Int'l, Inc. v. NGP Software, Inc.*,
  714 F. Supp. 2d 1 (D.D.C. 2010) ......................................................................... 19

*California Dept' of Toxic Substances Control v. Jim Dobbas, Inc.*,
  54 F.4th 1078 (9th Cir. 2022).................................................................................. 7

*Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*,
  344 F. Supp. 2d 108 (D.D.C. 2004). ................................................................11, 12

*Coal. of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of Interior*,
  100 F.3d 837, 845 (10th Cir. 1996) ...................................................................... 16

*Conservation L. Found. of New England, Inc. v. Mosbacher*,
  966 F.2d 39 (1st Cir. 1992) ................................................................................... 17

*Conservation L. Found., Inc. v. Acad. Express, LLC*,
  129 F.4th 78 (1st Cir. 2025). ................................................................................ 14

*Daggett v. Comm'n on Governmental Ethics & Election Pracs.*,
  172 F.3d 104 (1st Cir. 1999) ................................................................... 8, 9, 13, 19

*Diamond v. Charles*,
  476 U.S. 54 (1986)........................................................................................... 9, 13

*EEOC v. Nat'l Children's Ctr., Inc.*,
  146 F.3d 1042 (D.C. Cir. 1998)............................................................................. 19

*Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*,
  983 F.2d 211 (11th Cir. 1993) .............................................................................. 19

*Fisheries Survival Fund v. Jewell*,
  No. 16-CV-2409 (TSC), 2018 WL 4705795 (D.D.C. Sept. 30, 2018)................11, 12

*Guckenberger v. Bos. Univ.*,
  957 F. Supp. 306 (D. Mass. 1997) ....................................................................... 10

*Housatonic River Initiative v. EPA, New England Region*,
  75 F.4th 248 (1st Cir. 2023). ................................................................................ 14

*Hunt v. Washington State Apple Advert. Comm'n*,
  432 U.S. 333 (1977)................................................................................................ 9

*Idaho Farm Bureau Fed'n v. Babbitt*,
  58 F.3d 1392 (9th Cir. 1995). ............................................................................... 16

*In re Efron*,
  746 F.3d 30 (1st Cir. 2014) .................................................................................... 8

*Japan Whaling Ass'n v. American Cetacean Society*,
  478 U.S. 221 (1986)...........................................................................................11, 12

*John R. Sand & Gravel Co. v. United States*,
  59 Fed. Cl. 645 (2004). ................................................................................ 16

*Kane Ctny. v. United States*,
  298 F.3d 877 (10th Cir. 2002) ........................................................................ 7

*Klamath Irr. Dist. v. United States*,
  64 Fed. Cl. 328 (2005) .................................................................................. 16

*Mausolf v. Babbitt*,
  85 F.3d 1295 (8th Cir. 1996) ......................................................................... 14

*Purnell v. City of Akron*,
  925 F.2d 941 (6th Cir. 1991) ......................................................................... 19

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
  584 F.3d 1 (1st Cir. 2009) ........................................................................... 8, 9

*Sagebrush Rebellion, Inc. v. Watt*,
  713 F.2d 525 (9th Cir. 1983). ........................................................................ 14

*San Juan Cnty., Utah v. United States*,
  503 F.3d 1163, 1199 (10th Cir. 2007) ........................................................... 14

*See Me. People's All. & Nat. Res. Def. Council v. Mallinckrodt, Inc.*,
  471 F.3d 277 (1st Cir. 2006) ......................................................................... 14

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ...................................................................................... 12

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ......................................................................... 19

*T-Mobile Ne. LLC v. Town of Barnstable*,
  969 F.3d 33 (1st Cir. 2020) ............................................................................. 8

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972). ...................................................................................... 16

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe*,
  164 F.3d 1080 (8th Cir. 1999) ....................................................................... 19

*Utah Ass'n of Ctys. v. Clinton*,
  255 F.3d 1246  (10th Cir. 2001) .................................................................... 14

*Warth v. Seldin,*
  422 U.S. 490 (1975). ...................................................................................... 10

## Other Authorities

89 Fed. Reg. 7633 (Feb. 5, 2024). ..................................................................... 6

Temporary Withdrawal of All Areas on the Outer Continental Shelf From Offshore Wind Leasing
  and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects,
  90 Fed. Reg. 8363. ........................................................................................... 4

**Rules**

Fed. R. Civ. P. 24(a)(2) ................................................................................................. 9, 13

Fed. R. Civ. P. 24(b)(1)(B). ................................................................................................. 19

Fed. R. Civ. P. 24(b)(3). ................................................................................................. 8, 19

**Table of Exhibits**

| Exhibit No. | Description |
| --- | --- |
| Ex. 1 | Declaration of Elizabeth Quattrocki Knight |
| Ex. 2 | Declaration of Richard Hittinger |
| Ex. 3 | Declaration of William Vanderhoop |
| Ex. 4 | Declaration of Barbara Chapman |
| Ex. 5 | Declaration of Chris Brown |
| Ex. 6 | Declaration of Lauren Knight |
| Ex. 7 | Declaration of C. Andrews Maltais |

**Glossary**

| Abbreviation | Definition |
| --- | --- |
| APA | Administrative Procedure Act |
| BOEM | Bureau of Ocean Energy Management |
| NMFS | National Marine Fisheries Service |
| NOAA | National Oceanic and Atmospheric Administration |
| OCSLA | Outer Continental Shelf Lands Act |

Proposed Defendant-Intervenor, Green Oceans, moves to intervene as of right as a Defendant in this action under Federal Rule of Civil Procedure 24(a)(2), or, alternatively, seeks permissive intervention under Rule 24(b). Green Oceans is a nonprofit organization dedicated "to protecting the ocean from industrialization, and in particular, to protect Cox Ledge, a unique ocean habitat that supports a plethora of diverse marine life off the coast of Rhode Island."[1] Lifting the August 22, 2025 Stop Work Order currently in place, as Rhode Island and Connecticut (collectively, the States) request, will significantly affect Green Oceans' similar case in the U.S. District Court for the District of Columbia,[2] undermine its mission, cause irreparable harm to its members, and effectively predetermine the review that the Bureau of Ocean Energy Management (BOEM) is now conducting.

Because this case directly affects Green Oceans' organizational mission,[3] Green Oceans seeks intervention of right, or, in the alternative, permissive intervention in this case to protect its interests. Green Oceans meets the requirements for intervention as of right because it has standing, a legally protected interest in the waters and resources affected by the Revolution Wind Project, and its interests are not adequately represented by the existing parties. In the alternative, Green Oceans satisfies the criteria for permissive intervention, as its defenses raise the same legal and factual questions raised by the States.

---

[1] Ex. 1, Decl. of E. Knight ¶ 1.

[2] *See Green Oceans v. United States Department of Interior*, Case No. 1:24-cv-00141-RCL (D.D.C.).

[3] *See* Ex. 1, Decl. of E. Knight ¶ 1 ("Our mission is to educate the public about the ocean's ecological importance and to promote its continued health and biodiversity. Our members are like-minded individuals and organizations that share a desire to protect the natural habitat of the ocean from industrialization and to preserve the marine ecosystem, from the smallest plankton to the largest whale. This includes protecting food sources and water supply from contamination by industrialization and from invasive species that are a byproduct of industrialization. Industrial development in the ocean directly interferes with our ability to carry out that mission and harms the interests of our members, who seek to use, enjoy, and protect these marine resources.").

**Factual Background**

Green Oceans is a Rhode Island–based nonprofit organization formed to protect the ocean and coastal communities from the harms of large-scale offshore wind development.[4] Green Oceans' membership includes scientists, educators, doctors, commercial and recreational fishermen, boaters, sailors, bird watchers, whale enthusiasts, members of the Wampanoag Tribe of Gay Head (Aquinnah), local business leaders, veterans, and coastal homeowners—all of whom share a deep connection to Rhode Island's coastal waters, marine environment, protected species, scenic views, and the recreational and commercial uses threatened by the Revolution Wind Project.[5]

On August 22, 2025, BOEM's Director issued a Stop Work Order for the Revolution Wind Project, halting all construction activities until BOEM completes "its necessary review," citing concerns including protection of national security interests and preventing interference with reasonable uses of U.S. waters under the Outer Continental Shelf Lands Act (OCSLA).[6] Green Oceans, a Rhode Island-based nonprofit environmental organization, is the lead plaintiff in the similar case of *Green Oceans v. Department of the Interior*, Case No. 1:24-cv-00141-RCL (D.D.C.), challenging the federal approval of this same Revolution Wind Project, which is currently in the midst of summary judgment briefing on the merits.

---

[4] *See* Ex. 1, Decl. of E. Knight ¶ 1-3.

[5] *See* Ex. 1, Decl. of E. Knight ¶ 6 (identifying members, Chris Brown (commercial fisherman), Richard Hittinger (recreational fisherman), William Vanderhoop (charter fishing and whale watching tours), Lauren Knight (recreational sailor), Michael Lombardi (diver and marine scientist), Barbara Chapman (historic property owner), and the Wampanoag Tribe of Gay Head/Aquinnah); Ex. 2, Decl. of R. Hittinger, Ex. 3, Decl. of W. Vanderhoop; Ex. 4, Decl. of B. Chapman.

[6] Department of the Interior, *Director's Order* (Aug. 22, 2025), https://www.boem.gov/sites/default/files/documents/renewable-energy/Director%26%23039%3BsOrder-20250822.pdf?VersionId=VO3AWAHsV_kDvT048xf8dG7A.Rsj6HZJ.

On September 4, 2025, Revolution Wind, LLC, the Project's developer, filed a similar

suit to the States' challenging the Secretary's Stop Work Order seeking declaratory and

injunctive relief.[7] The following day, Revolution Wind filed a motion for preliminary injunction

and administrative stay.[8] Green Oceans moved to intervene in that case on September 12, 2025,

and sought a brief extension to respond to the motion for preliminary injunction.[9] The court

granted Green Oceans' motion on September 17, 2025,[10] and Green Oceans filed its opposition

to the motion for preliminary injunction that same day.[11] Oral argument on Revolution Wind's

motion for preliminary injunction or administrative stay to lift the Stop Work Order is scheduled

for September 22, 2025 in the United States District Court for the District of Columbia.[12]

1.    **Department of Interior's Recent Repudiation of the Statutory Interpretation Used
      to Approve the Project**

When BOEM approved the Project, it relied on and cited a 2021 Solicitor's Opinion

interpreting the "shall ensure" provision in Section 1337(p)(4) of OCSLA to require only a

"rational balance" among the various "shall ensure" factors.[13] Applying this balancing test,

BOEM acknowledged serious adverse impacts to fishing, the environment, safety, and navigation

---

[7] *Revolution Wind, LLC v. Burgum*, Case No. 1:25-cv-02999-RCL (D.D.C. Sept. 4, 2025), ECF
No. 1.
[8] *Revolution Wind, LLC v. Burgum*, Case No. 1:25-cv-02999-RCL (D.D.C. Sept. 5, 2025), ECF.
No. 9.
[9] *Revolution Wind, LLC v. Burgum*, Case No. 1:25-cv-02999-RCL (D.D.C. Sept. 12, 2025), ECF
No. 16.
[10] *Revolution Wind, LLC v. Burgum*, Case No. 1:25-cv-02999-RCL  (D.D.C. Sept. 17, 2025),
ECF No. 27.
[11] *Revolution Wind, LLC v. Burgum*, Case No. 1:25-cv-02999-RCL (D.D.C. Sept. 17, 2025), ECF
No. 29.
[12] *Revolution Wind, LLC v. Burgum*, Case No. 1:25-cv-02999-RCL (D.D.C. Sept. 16, 2025),
Minute Order.
[13] Bureau of Ocean Energy Management, *Record of Decision Revolution Wind Farm and
Revolution Wind Export Cable Project Construction and Operations Plan* at 5-6(Aug. 21, 2023),
https://www.boem.gov/sites/default/files/documents/renewable-energy/state-
activities/Revolution-Wind-Record-of-Decision-OCS-A-0486_3.pdf.

3

but treated those impacts as acceptable tradeoffs for wind energy.[14] This unlawful interpretation allowed BOEM to prioritize offshore wind over the commercial fishing uses Congress sought to protect in the Act.

On May 1, 2025, the Interior Department formally withdrew and repudiated the Solicitor's Opinion that BOEM relied on as its statutory authority for approving the Project, stating that because legal analysis BOEM relied on "conflicts with the best reading of OCSLA," that interpretation "is hereby withdrawn . . . and any other Departmental action taken in reliance on the now withdrawn M-Opinion 37067, should be re-evaluated in light of this Memorandum."[15]

On January 20, 2025, the President issued a Presidential Memorandum which ordered that the Secretary of the Interior, for existing leases on federal lands (which includes the Outer Continental Shelf), "shall conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases," and that no new or renewed "approvals, rights of way, permits, leases, or loans for onshore or offshore wind projects" shall be issued "pending the completion of a comprehensive assessment and review of Federal wind leasing and permitting practices."[16]

---

[14] *Id.* at 20 (alternative chosen by "striking a reasonable balance between" impacts to varied resources.); *Id.* at 25 ("Today's decision balances the orderly development of OCS renewable energy with the prevention of interference with other uses of the OCS and the protection of the human, marine, and coastal environments. A decision that balances these goals where they conflict and does not hold one as controlling over all others is consistent with the duties required under subsection 8(p)(4) of OCSLA, which requires the Secretary to ensure that approved activity is carried out in a manner that provides for Congress's enumerated goals.").

[15] *See* Off. of the Solicitor, *U.S. Dep't of the Interior, Memorandum Opinion on the Withdrawal of Solicitor's Opinion M-37067 and Reinstatement of M-Opinion 37059* at 3 (May 1, 2025), https://www.doi.gov/sites/default/files/documents/2025-05/m-37086.pdf.

[16] Temporary Withdrawal of All Areas on the Outer Continental Shelf From Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects, 90 Fed. Reg. 8363.

On July 29, 2025, the Secretary of the Interior issued a Secretarial Order describing BOEM's prior offshore wind approvals as being "egregious misinterpretations" of the law and that the "prior Department's leadership chose to misapply section [1337(p)(4)] of OCSLA when making decisions to approve . . . offshore wind energy projects," and "[r]ather than recognizing that each section [1337(p)(4)] criterion constitutes an independent, affirmative obligation," the prior Department "operated under the erroneous assumption that it could meet some criteria while ignoring or minimizing others."[17]

On August 22, 2025, BOEM's Director issued a Stop Work Order for the Project, halting construction to "ensure that all activities authorized under the Outer Continental Shelf Lands Act . . . are carried out in a manner that provides for protection of the environment, among other requirements."[18] The Director issued the Stop Work Order "to allow time for [BOEM] to address concerns that have arisen during the review that the Department is undertaking pursuant to the President's Memorandum of January 20, 2025."[19] And the Director noted that "BOEM is seeking to address concerns related to the protection of national security interests of the United States and prevention of interference with reasonable uses of the exclusive economic zone, the high seas, and the territorial seas, as described in that subsection of OCSLA."[20]

---

[17] Department of the Interior, *Secretarial Order 3437–Ending Preferential Treatment for Unreliable, Foreign Controlled Energy Sources in Department Decision-Making* at 2-3 (July 29, 2025), https://www.doi.gov/document-library/secretary-order/so-3437-ending-preferential-treatment-unreliable-foreign.

[18] Department of the Interior, *Director's Order* at 1 (Aug. 22, 2025), https://www.boem.gov/sites/default/files/documents/renewable-energy/Director%26%23039%3BsOrder-20250822.pdf?VersionId=VO3AWAHsV_kDvT048xf8dG7A.Rsj6HZJ.

[19] *Id.*

[20] *Id.*

2.      **Green Oceans' Interests**

Green Oceans and its members have been at the forefront of efforts to safeguard Cox Ledge, one of the most important spawning and fishing grounds in southern New England. The organization submitted thousands of signatures supporting the designation of Cox Ledge as a Habitat Area of Particular Concern, filed comments on BOEM's environmental reviews and the National Atmospheric Administration's whale protection strategy, and conducted independent research into the impacts of offshore wind development on marine ecosystems and property values. In February 2024, the National Marine Fisheries Service (NMFS) declared Cox Ledge a Habitat Area of Particular Concern "due to concerns about the potential adverse impacts on essential fish habitat (EFH) from the development of offshore wind energy projects," and the designation "focuses on important cod spawning grounds and areas of complex habitat that are known to serve important habitat functions[.]".[21]

Green Oceans' members are directly threatened with harm if construction of the Revolution Wind Project resumes. Commercial fisherman, Chris Brown, explains that Cox Ledge is "one of the most productive" cod grounds in the region, and further turbine work will drive fish from the area and devastate his livelihood.[22] Recreational fisherman, Richard Hittinger, warns that continued construction will make Cox Ledge permanently unproductive, citing that there are already "no cod or sea bass close to the turbines."[23] Whale-watching and charter operator, William Vanderhoop, a member of the Wampanoag Tribe of Gay Head (Aquinnah), testifies that further construction will desecrate sacred viewsheds and destroy

---

[21] 89 Fed. Reg. 7633 (Feb. 5, 2024).
[22] Ex. 5, Decl. of C. Brown ¶ 2.
[23] Ex. 2, Decl. of R. Hittinger ¶ 4-6.

traditional fishing grounds.[24] Recreational sailor, Lauren Knight, has been forced to reroute her sailing trips because of the Project's lights, noise, and navigational hazards.[25] And historic homeowner, Barbara Chapman, explains that the installation of additional turbines will permanently degrade the historic Ocean Drive views that give her property national significance.[26] For the Wampanoag Tribe, the Project threatens burial grounds, sacred sites, and cultural landscapes essential to the Tribe's identity, while also placing the North Atlantic Right Whale—a species of profound cultural and spiritual significance—at heightened risk from construction noise and vessel traffic.[27]

**Standard of Review**

The burden of proof under Rule 24(a) is on the moving party,[28] and the requirements for granting intervention of right are construed liberally.[29] The burden of establishing inadequate representation "'should be treated as minimal' and can be satisfied by showing 'that representation of [the] interest '*may* be' inadequate.'"[30]

To intervene as of right under Federal Rule of Civil Procedure 24(a)(2), an applicant must demonstrate that the application is timely; that the applicant has a legally protected interest; that

---

[24] Ex. 3, Decl. of W. Vanderhoop ¶ 5-8.

[25] Ex. 6, Decl. of L. Knight ¶ 2-4.

[26] Ex. 4, Decl. of B. Chapman ¶ 6.

[27] Ex. 7, Decl. of C. Andrews Maltais ¶ 4-7.

[28] *See*, *e.g.*, *California Dept' of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1086 (9th Cir. 2022).

[29] *See Kane Ctny. v. United States*, 298 F.3d 877, 890 (10th Cir. 2002).

[30] *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 807 F.3d 472, 475 (1st Cir. 2015) (quoting *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n. 10 (1972)) (emphasis in original).

the action threatens to impair the interests of the applicant; and that no party to the action adequately represents the applicants' interests.[31]

Under Rule 24(b), a district court has broad discretion to allow permissive "intervention of any party who 'has a claim or defense that shares with the main action a common question of law or fact.'"[32] The rule directs courts to consider whether intervention will unduly delay or prejudice the existing parties.[33] The court may also "'consider almost any factor rationally relevant' to the intervention determination[,]"[34] including whether "'the applicants may be helpful in fully developing the case.'"[35] Where, as here, intervention will aid the Court by ensuring all affected interests are before it, permissive intervention is proper.[36]

Green Oceans has met the standard for intervention of right and for permissive intervention.

## Argument

### 1.    Green Oceans Has Legally Protected Interests and Is Entitled to Intervene as of Right

Under the Federal Rules of Civil Procedure,

[o]n timely motion, the court *must* permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede

---

[31] *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009); *see also In re Efron*, 746 F.3d 30, 35 (1st Cir. 2014).

[32] *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 40 (1st Cir. 2020) (quoting Fed. R. Civ. P. 24(b)(3)).

[33] Fed. R. Civ. P. 24(b)(3).

[34] *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 40 (1st Cir. 2020) (quoting *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 113 (1st Cir. 1999)).

[35] *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 41 (1st Cir. 2020) (quoting *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 113 (1st Cir. 1999)).

[36] *See, e.g.*, *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 113 (1st Cir. 1999) ("The fact that the applicants may be helpful in fully developing the case is a reasonable consideration in deciding on permissive intervention.").

the movant's ability to protect its interest, unless existing parties adequately represent that interest. [37]

"To prevail on a motion for intervention as of right, a putative intervenor must demonstrate (1) the timeliness of her motion; (2) a concrete interest in the pending action; (3) 'a realistic threat' that resolution of the pending action will hinder her ability to effectuate that interest; and (4) the absence of adequate representation by any existing party."[38]

### A. Green Oceans Has Standing

"[T]he circuits are divided as to whether an intervenor as of right must possess standing under Article III, and the Supreme Court has reserved judgment on the point."[39] The First Circuit "has not taken a position on the issue" of whether a putative intervenor must establish Article III standing. [40] "Although the two are not identical, the 'interest' required under Rule 24(a) has some connection to the interest that may give the party a sufficient stake in the outcome to support standing under Article III."[41]

Green Oceans has associational standing. To establish associational standing, an organization must show that "(a) its members would otherwise have standing to sue in their own right, (b) the interests it seeks to protect are germane to the organization's purpose, and (c) neither the claim asserted nor the relief requested requires the participation of individual members."[42] As described above, Green Oceans' members—including Brown, Hittinger, Knight,

---

[37] Fed. R. Civ. P. 24(a)(2) (emphasis added).

[38] *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 39 (1st Cir. 2020) (quoting *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009)).

[39] *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 109 (1st Cir. 1999).

[40] *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 109 (1st Cir. 1999).

[41] *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 110 (1st Cir. 1999) (citing *Diamond v. Charles*, 476 U.S. 54, 68-69 (1986)).

[42] *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Vanderhoop, Chapman, and the Wampanoag Tribe of Gay Head/Aquinnah—suffer direct injuries to their livelihoods, cultural traditions, and recreational use of the ocean. Protecting ocean health, fisheries, navigation, marine mammals, and cultural resources is the core mission of Green Oceans, making these interests plainly germane.[43] And because Green Oceans seeks only declaratory and injunctive relief, no individualized proof is required from members for the Court to grant relief, satisfying the third prong.[44]

Green Oceans also has organizational standing in its own right. To establish organizational standing, an organization must show that "'(1) [it] personally has suffered some actual or threatened injury as a result of the challenged conduct; (2) the injury can be fairly traced to that conduct; and (3) the injury likely will be redressed by a favorable decision from the court.'"[45] Its mission is to protect Rhode Island's coastal waters from industrialization, and Revolution Wind directly frustrates that purpose by degrading Cox Ledge and displacing marine life. Maintaining the Stop Work Order prevents further harm to those interests, making Green Oceans' injury redressable.

The D.C. district court has granted Green Oceans intervention of right in the parallel case of *Green Oceans v. Department of the Interior*, Case No. 1:24-cv-00141-RCL (D.D.C.), which involves the same Revolution Wind Project and seeks the same relief (removing the Stop Work

---

[43] *See* Ex. 1, Decl. of E. Knight ¶ 1-2, 6.

[44] *See Guckenberger v. Bos. Univ.*, 957 F. Supp. 306, 321 (D. Mass. 1997) ("[T]he primary forms of relief sought—injunctive and declaratory relief against BU's implementation of its new accommodations policy—do not require the individual participation" of the organizations members.); *see also Warth v. Seldin,* 422 U.S. 490, 515 (1975) (finding that where "the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured," and thus, that the association can represent those members in seeking these forms of relief).

[45] *See Guckenberger v. Bos. Univ.*, 957 F. Supp. 306, 319 (D. Mass. 1997) (quoting *New Hampshire Right to Life Political Action Comm. v. Gardner,* 99 F.3d 8, 13 (1st Cir.1996)).

Order) as this case seeks. [46] Green Oceans' members will suffer concrete injuries if Revolution Wind is allowed to resume construction and operate turbines on Cox Ledge. The project degrades essential and valuable fish and marine habitat, displaces cod and lobster, threatens the critically endangered North Atlantic Right Whale with harmful underwater noise, and creates navigational hazards for commercial and recreational vessels. The Project scars coastal viewsheds and diminishes property values for residents and Tribal members who have cultural and spiritual ties to the seascape. These harms directly impair members' ability to fish, sail, whale-watch, dive, and enjoy Rhode Island's coastline. Courts have long recognized these types of injuries as sufficient for standing. [47] And Courts have held that "those who use or depend on the use of the wind farm area and the natural resources contained therein for fishing, navigation, and associated economic and recreational benefits" are within OCSLA's zone of interest and have standing. [48] In addition, "[t]he use or enjoyment of wildlife is a cognizable interest for standing purposes." [49] And when Government action threatens economic and recreational interests—including the "livelihood of [commercial] fishermen"—a justiciable injury in fact exists. [50]

The Stop Work Order has temporarily alleviated some of Green Oceans' injuries. Construction vessels have left the area, making navigation safer and restoring access to fishing

---

[46] *Revolution Wind, LLC v. Burgum*, Case No. 1:25-cv-02999-RCL (D.D.C. Sept. 5, 2025), ECF. No. 9-7.

[47] *See, e.g., Japan Whaling Ass'n v. American Cetacean Society*, 478 U.S. 221, 230 n. 4, 106 S.Ct. 2860, 2866 n. 4, 92 L.Ed.2d 166 (1986) (association members "undoubtedly have alleged a sufficient 'injury in fact' in that the whale watching and studying of their members will be adversely affected").

[48] *Fisheries Survival Fund v. Jewell*, No. 16-CV-2409 (TSC), 2018 WL 4705795, at *5–6 (D.D.C. Sept. 30, 2018).

[49] *Id.*

[50] *See Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 108 (D.D.C. 2004).

grounds. Construction noise that displaces and endangers whales has ceased, improving conditions for members who rely on opportunities to view and study marine mammals.[51] Further environmental damage and loss of historic viewsheds have paused.[52] If Rhode Island and Connecticut succeed in setting aside the Stop Work Order, these harms will immediately resume, causing direct injury to Green Oceans' members. These environmental, cultural, recreational, and economic harms are precisely the type of injuries that courts have recognized as sufficient for Article III standing.[53]

Causation and redressability are also clear. If the Court grants Rhode Island and Connecticut the relief they seek and sets aside the Stop Work Order, Green Oceans' members will once again continue to suffer the harms caused by Project construction. By contrast, denying the States' request will prevent those harms by keeping the Stop Work Order in place.

**B.    Green Oceans' Motion Is Timely**

Green Oceans filed this motion two weeks after the States filed their Complaint and before any responsive pleadings have been filed. Courts in this Circuit have found that the

---

[51] Ex. 3, Decl. of W. Vanderhoop ¶ 1.

[52] Ex. 4, Decl. of B. Chapman ¶ 7–9.

[53] *See, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009) ("While generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice."); *see also Japan Whaling Ass'n v. American Cetacean Society*, 478 U.S. 221, 230 n. 4, 106 S.Ct. 2860, 2866 n. 4, 92 L.Ed.2d 166 (1986) (association members "undoubtedly have alleged a sufficient 'injury in fact' in that the whale watching and studying of their members will be adversely affected"); *Fisheries Survival Fund v. Jewell*, No. 16-CV-2409 (TSC), 2018 WL 4705795, *5–6 (D.D.C. Sept. 30, 2018) ("[T]hose who use or depend on the use of the wind farm area and the natural resources contained therein for fishing, navigation, and associated economic and recreational benefits" are injured under OCSLA and "[t]he use or enjoyment of wildlife is a cognizable interest for standing purposes."); *Cape Hatteras Access Pres. All. v. Dep't of Interior*, 344 F. Supp. 2d 108 (D.D.C. 2004) (when Government action threatens economic and recreational interests—including the "livelihood of fishermen"—a justiciable injury in fact has occurred.).

timeliness requirement for a motion to intervene is "easily met" where the putative intervenors filed their motion to intervene within two weeks after the filing of a suit.[54]

### C.    Green Oceans Has Concrete Interests Relating To This Pending Action

For the same reasons that Green Oceans has constitutional standing, Green Oceans has a concrete "interest relating to the property or transaction which is the subject of the action."[55] Green Oceans is also "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest . . . ."[56]

This inquiry is a "practical test" that focuses on the adverse effect that an unfavorable decision in the underlying action could have on the putative intervenor.[57] It is satisfied where "there can be no real dispute that the applicants' interests would be adversely affected if the present suit were lost by the defendants."[58] That is the situation here, where Plaintiffs are asking the Court to vacate BOEM's Stop Work Order and allow construction of the Revolution Wind Project—and the environmental devastation it will cause—to continue.

Green Oceans' interests also arise from the same property and the same transaction at issue in this case. The property is the area of the Outer Continental Shelf occupied by the Revolution Wind Project—waters that Green Oceans' members use for fishing, navigation, recreation, and cultural practices. The transaction is BOEM's approval of Revolution Wind's

---

[54] *See Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 108 (1st Cir. 1999).
[55] Fed. R. Civ. P. 24(a)(2); *see also Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 110 (1st Cir. 1999) (citing *Diamond v. Charles*, 476 U.S. 54, 68-69 (1986)).
[56] Fed. R. Civ. P. 24(a)(2).
[57] *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 110 (1st Cir. 1999).
[58] *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 110 (1st Cir. 1999).

construction and operations plan, and BOEM's subsequent decision to suspend those approvals through the August 22, 2025 Stop Work Order. Because both Green Oceans and States are contesting the lawfulness of agency action affecting the same project approvals on the same lease area, Green Oceans' interests are directly tied to the subject matter of this case.

Environmental interests, like those represented here by Green Oceans, have been repeatedly recognized as legally protectable interests.[59] Courts have been particularly inclined to find such an interest sufficient where the applicant has a history of advocating or litigating to protect the resource in question.[60] In *Housatonic River Initiative v. EPA, New England Region*,[61] the First Circuit held that individual members of an environmental group who used an area for recreation, and feared "that the [proposed] disposal facility [would] negatively impact their use and enjoyment of the area" had "plainly" alleged injuries-in-fact.[62] And in *Conservation L. Found., Inc. v. Acad. Express*,[63] the First Circuit held that an environmental group had standing under the Clean Air Act where its members alleged that the threat of "breathing and smelling polluted air" in an area prevented them from using the area for recreation and aesthetic enjoyment.[64]

---

[59] *See, e.g.*, *San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007) (en banc) ("We think it indisputable that SUWA's environmental concern [in protecting Salt Creek Canyon from the negative impacts of vehicular traffic] is a legally protectable interest."); *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1252 (10th Cir. 2001) ("[W]e find persuasive those opinions holding that organizations whose purpose is the protection and conservation of wildlife and its habitat have a protectable interest in litigation that threatens those goals." (citing *Mausolf v. Babbitt*, 85 F.3d 1295, 1302 (8th Cir. 1996); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527–28 (9th Cir. 1983))).

[60] *See San Juan County*, 503 F.3d at 1199; *Utah Ass'n of Counties*, 255 F.3d at 1252.

[61] *Housatonic River Initiative v. EPA, New England Region*, 75 F.4th 248 (1st Cir. 2023).

[62] *Id*. at 265.

[63] *Conservation L. Found., Inc. v. Acad. Express, LLC*, 129 F.4th 78, 87 (1st Cir. 2025).

[64] *Id*. at 87; *see also See Me. People's All. & Nat. Res. Def. Council v. Mallinckrodt, Inc.*, 471 F.3d 277, 284 (1st Cir. 2006) ("[A]n individual's decision to deny herself aesthetic or recreational

Here, Green Oceans and its members have a significant record of protecting and advocating for marine resources like the North Atlantic Right Whale, the essential habitat of Cox Ledge, recreational and commercial ocean fishing, and the aesthetic interests of historic preservation and open ocean views.[65]

### D.    An Adverse Decision Will Substantially Impair Green Oceans' Legally Protected Interests

"It generally is agreed that in determining whether disposition of the action will impede or impair the movant's ability to protect its interest[,] the question must be put in practical terms rather than in legal terms."[66] Here, Green Oceans' and its members' environmental, cultural, and aesthetic interests form the gravamen of their pending suit to reverse and set aside the Government's approval of the Revolution Wind Project. The Stop Work Order has given Green Oceans temporary relief by halting the Project's injury to marine mammals and other endangered animals;[67] the destruction of the irreplaceable Cox Ledge fisheries and benthic habitat;[68] and the impairment of the ocean vistas that are part and parcel of Newport's historic Gilded Age homes.[69] Lifting the Stop Work Order to allow construction to resume will irreparably impair

---

pleasures based on concern about pollution will constitute a cognizable injury only when the concern is premised upon a realistic threat.").

[65] *See*, *e.g.*, *Green Oceans v. United States*, Case No. 1:24-cv-00141-RCL, ECF No. 87-1 at 13-27 (D.D.C.); *see also id*. at 8-13; *id*. at 32-39; *see* Green Oceans, *Our Mission, Education*, https://www.green-oceans.org/ (last visited Sept. 18, 2025).

[66] 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1908.2 (3d ed. 2010).

[67] *See*, *e.g.*, *Green Oceans v. United States*, Case No. 1:24-cv-00141-RCL, ECF No. 87-1 at 13-27 (D.D.C.).

[68] *See*, *e.g.*, *Green Oceans v. United States*, Case No. 1:24-cv-00141-RCL, ECF No. 87-1 at 8-9 (D.D.C.); *see also id*. at 12-13.

[69] *See*, *e.g.*, *Green Oceans v. United States*, Case No. 1:24-cv-00141-RCL, ECF No. 87-1 at 32-29 (D.D.C.).

Green Oceans' protected interests as the Project's Developer fires up its massive construction vessels to continue destroying the ocean environment.

### E.    The Government Does Not Adequately Represent Green Oceans' Interests in This Case

The burden of demonstrating inadequacy of representation is not heavy: according to the Supreme Court, this requirement, is "satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."[70]

Although, as a general matter, "[w]hen applicants seek to intervene as a party on the side of the United States, the government is presumed adequately to represent the applicants' interest," a showing of "adversity of interest" rebuts that presumption.[71] Such "adversity of interest" may exist, for example, where there is a long history of contentious litigation between the applicants for intervention and the government over the same matters at issue in the case.[72] This is exactly the case here. In the U.S. District Court for the District of Columbia, Green Oceans is actively challenging the Government's approvals of the Revolution Wind Project, and the Government, as well as the Developer, which intervened as a defendant, are actively defending those approvals.

Environmental groups' interests in protecting specific ecosystems, species, or natural resources are distinct from the broader regulatory or administrative interests of government agencies. This distinction can support their claim for intervention as of right under Rule 24(a)(2).

---

[70] *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).
[71] *John R. Sand & Gravel Co. v. United States*, 59 Fed. Cl. 645 (2004).
[72] *See Klamath Irr. Dist. v. United States*, 64 Fed. Cl. 328, 336 (2005); *Coal. of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 845 (10th Cir. 1996); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995).

To qualify for intervention as of right, a putative intervenor must demonstrate that the disposition of the action may impair or impede their ability to protect their interests. In *Conservation L. Found. of New England, Inc. v. Mosbacher*,[73] the First Circuit held that fishing groups were entitled to intervene in a case challenging an agency action which would "affect the proposed intervenors' business, both immediately and in the future."[74] The Court held that the fishing groups had "demonstrated both an interest in, and an adverse effect from" the agency action, reversing the district court's decision denying intervention to the fishing groups.[75]

Green Oceans represents the concrete interests of its members, which include recreational and commercial fishermen, marine scientists, whale watchers, members of the Wampanoag Tribe of Gay Head (Aquinnah), and coastal residents. These members depend on a healthy marine environment that sustains fishing and navigation, provides opportunities to observe and study whales, and protects cultural resources and sacred species such as the North Atlantic Right Whale. Their livelihoods, cultural traditions, and ability to enjoy Rhode Island's coastal waters turn on the protection of these resources, all of which are directly threatened by the continuation of the Revolution Wind Project.[76]

The Federal Defendants are charged with defending the broad public interest in administering OCSLA and other environmental statutes. That general duty does not encompass the specific, localized harms Green Oceans and its members face from Revolution Wind's

---

[73] *Conservation L. Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992).

[74] *Conservation L. Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992).

[75] *Conservation L. Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992).

[76] *See* Ex. 1, Decl. of E. Knight ¶ 6 (identifying members, Chris Brown (commercial fisherman), Richard Hittinger (recreational fisherman), William Vanderhoop (charter fishing and whale watching tours), Lauren Knight (recreational sailor), Michael Lombardi (diver and marine scientist), Barbara Chapman (historic property owner), and the Wampanoag Tribe of Gay Head/Aquinnah); Ex. 2, Decl. of R. Hittinger, Ex. 3, Decl. of W. Vanderhoop; Ex. 4, Decl. of B. Chapman.

construction. Green Oceans represents commercial and recreational fishermen, whale watchers, boaters, and coastal residents who rely on Cox Ledge and surrounding waters for their livelihoods, recreation, and cultural practices. These injuries are unique and concrete: lost access to spawning grounds, reduced catch and revenue, diminished whale watching opportunities, and threats to navigation and safety. The Federal Defendants cannot be expected to advance these grassroots, community-based concerns with the same vigor as Green Oceans. Their responsibility to balance competing national energy and policy interests creates an inherent divergence.

Nor can the States represent Green Oceans' interests. The States' entire goal in this action is to lift the Stop Work Order to allow for the Developer to proceed with construction and then operation of Revolution Wind. Green Oceans' mission has been to prevent Revolution Wind from degrading the marine environment, harming biodiversity, fishing and navigation interests, and protected species; and to ensure that offshore development complies with OCSLA's safeguards and does not sacrifice biodiversity, fisheries, or cultural resources. Without intervention, the specific interests of those most directly affected—local fishermen, mariners, property owners, and those with aesthetic and recreational interests in protected species—will go unheard.

Green Oceans meets the minimal burden of showing that its interests "may be" inadequately represented, and intervention as of right is warranted.

**2.     In the Alternative, the Court Should Grant Permissive Intervention**

In the alternative, the Court should grant Green Oceans permissive intervention because it has met the requirements of Rule 24(b). Under that rule, a would-be party can intervene when the applicant has a "claim or defense that shares with the main action a common question of law

or fact."[77] And in "exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."[78] The court "'enjoys very broad discretion in granting or denying'" a motion for permissive intervention.[79] This "'inherently discretionary enterprise'"[80] is not restrictive,[81] and Rule 24(b) "provides basically that anyone may be permitted to intervene if his claim and the main action have a common question of law or fact."[82]

Because Green Oceans asserts defenses under federal statutes already at issue in this case, OCSLA and the Administrative Procedure Act (APA) and, as discussed above, Green Oceans has Article III standing, Green Oceans' claims share a common question of law and fact with the main action, and this Court has independent subject matter jurisdiction. This motion is also timely and will not cause undue delay, as discussed above, because Green Oceans filed its motion 14 days after the States' complaint was filed.

The common questions of law and fact requirement is satisfied here. Rhode Island and Connecticut claim BOEM exceeded its authority under OCSLA by issuing the August 22, 2025 Stop Work Order. Green Oceans, as a Defendant, will defend by showing that OCSLA requires

---

[77] Fed. R. Civ. P. 24(b)(1)(B).

[78] Fed. R. Civ. P. 24(b)(3).

[79] *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 40–41 (1st Cir. 2020) (quoting *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 110 (1st Cir. 1999)).

[80] *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.D.C. 2010) (*EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)).

[81] *See also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) ("In general, we construe Rule 24(a) liberally in favor of potential intervenors."); *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999) ("Rule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor."); *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) ("any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors"); *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991) (Rule 24 should be "broadly construed in favor of potential intervenors").

[82] *Nuesse v. Camp*, 385 F. 2d 694, 704 (D.C. Cir. 1967).

BOEM to ensure offshore projects are carried out with adequate safeguards for safety, the environment, and other uses of the ocean such as fishing and navigation. Both sides will therefore put before the Court the same legal issue: the scope of BOEM's authority under OCSLA and whether the statute allows the agency to act when those safeguards are at risk. The factual issues also overlap. Both the States' claims and Green Oceans' defenses turn on the same project—the Revolution Wind facility—and its effects on the same ocean space and resources, including Cox Ledge, a vital fishing ground and whale habitat.

Without Green Oceans' participation, the Court risks inconsistent rulings on OCSLA compliance. Rhode Island and Connecticut ask the Court to hold that BOEM acted unlawfully in suspending construction, while Green Oceans, as a Defendant, will defend that BOEM was fulfilling its duty under OCSLA to protect other ocean uses and the environment. Both perspectives are essential for the Court to resolve the same question: whether BOEM complied with OCSLA's substantive requirements. Green Oceans also brings the unique perspective of a local, grassroots organization whose members directly rely on the waters affected by the project for their livelihoods, recreation, and culture.

**3.      Green Oceans Should Be Permitted to File Its Answer by the Same Deadline as Federal Defendants**

Green Oceans seeks leave to file its Answer or other responsive briefing under Federal Rule Civil Procedure 24(c) by the same deadline as the Federal Defendants. This motion fully informs the Court and the parties of the nature and basis for Green Oceans' participation, enabling the Court to evaluate intervention without the need for contemporaneous responsive pleading. Aligning Green Oceans' filing deadline with that of the Federal Defendants promotes judicial economy by avoiding premature or duplicative filings.

**Conclusion**

For the foregoing reasons, Green Oceans requests that the Court grant its motion to intervene as of right, or, in the alternative, to grant permissive intervention; and to grant Green Oceans leave to file its Answer or other responsive pleading on the same schedule as the Federal Defendants.

                                        Respectfully submitted,

                                        */s/ Thomas W. Lyons*
                                        Thomas W. Lyons, Esq.
                                        Rhode Island Bar No. 2946
                                        One State Street, Suite 600
                                        Providence, RI 02908
                                        Tel.:     (401) 456-0700
                                        Fax.:     (401) 421-4730
                                        tlyons@straussfactor.com

                                        Roger J. Marzulla (Pro Hac Vice Pending)
                                        D.C. Bar No. 394907
                                        Marzulla Law, LLC
                                        1150 Connecticut Ave., NW
                                        Suite 1050
                                        Washington, DC 20036
                                        Tel: (202) 822-6760
                                        roger@marzulla.com

September 18, 2025                      Attorney for Green Oceans


                        <u>CERTIFICATION</u>

I hereby certify that on September 18, 2025, a copy of the foregoing was filed and served electronically on all registered CM/ECF users through the Court's electronic filing system and served by email on attorneys for defendants. Parties may access this filing through the Court's CM/ECF system.

                                        /s/ Thomas W. Lyons

21