UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF RHODE ISLAND; STATE OF CONNECTICUT; and KATHERINE DYKES, Commissioner of the Connecticut Department of Energy and Environmental Protection, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR; DOUGLAS BURGUM, Secretary of the Interior, in his official capacity; BUREAU OF OCEAN ENERGY MANAGEMENT; MATTHEW GIACONA, Acting Director of Bureau of Ocean Energy Management, in his official capacity; BUREAU OF SAFETY AND ENVIRONMENTAL ENFORCEMENT; and KENNETH STEVENS, Principal Deputy Director of the Bureau of Safety and Environmental Enforcement, in his official capacity, <br><br> Defendants. | C.A. No. 1:25-cv-00439 |

**PLAINTIFF STATES' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO TRANSFER VENUE**

1

At the heart of this suit is the Plaintiff States' need to protect their reliance interests in the Revolution Wind Project, which makes landfall in North Kingstown, Rhode Island a mere 15 miles south from this Court, and has been developed, financed, and constructed here. Despite the clear locus of the case, Defendants argue that it should be sent to the United States District Court for the District of Columbia ("D.D.C."), a forum with which neither Plaintiff State has direct contacts. Federal Defendants' primary justification for arguing that this lawsuit should be transferred to D.D.C. is that other cases related to Revolution Wind are pending in that Court. But that on its own cannot overcome well-settled First Circuit precedent that the most important factor in any motion to transfer is the Plaintiffs' choice of forum, in tandem with the suit's connections with the forum state. Rhode Island, where 1,000 union workers built this project which is to provide clean energy for the State over the course of a 20-year power-purchase agreement signed in 2017, where company and State witnesses live and work, and which shares a border with Connecticut, is the appropriate venue for this Complaint.

Despite needing to establish all three requirements, Federal Defendants fail to show that the requested change of venue advances (1) the convenience of the parties, (2) the convenience of the witnesses, or (3) the interests of justice. 28 U.S.C. § 1404(a). Federal Defendants have offered no evidence that either private or public interest factors that courts typically consider when conducting a case-by-case analysis under § 1404(a) are significant enough to displace Plaintiff States' choice of venue. *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000) (holding that courts have broad discretion in ruling on motions to transfer, but, in so doing, must consider the "strong presumption in favor of the plaintiff's choice of forum"); *Relentless Inc. v. U.S. Dep't of Com.*, No. CV 20-108 WES, 2020 WL 5016923, at *1 (D.R.I. Aug. 25, 2020)

(citing *Coady* and finding that Plaintiff's choice of forum carried the day where the Rhode Island District Court was more convenient for Rhode Island plaintiffs).

I. **FACTS AND TRAVEL**

A. **The States Filed a Lawsuit in this Court**

The Revolution Wind Project ("Project") is an offshore wind farm located some 15 miles from the Rhode Island coast. *See* BOEM, Revolution Wind Construction and Operations Plan, Vol. 1, at ES-1 (Mar. 1, 2023), https://tinyurl.com/mwpf5nyd. Revolution Wind is slated to deliver clean energy to Rhode Island and Connecticut following its completion in 2026. *See* Dkt. 1 ("Compl.") ¶¶ 39–54; Dkt. 21, Ex. 1 ("Kearns Decl.") ¶ 13; Dkt. 21, Ex. 2 ("Dykes Decl.") ¶¶ 22, 49, 53. Over the course of decades, Plaintiff States and Federal Defendants have undertaken an extensive review of Revolution Wind covering every aspect of the Project's development. *See, e.g.*, Compl. ¶¶ 59–70; Dykes Decl. ¶¶ 23, 48; Kearns Decl. ¶¶ 13–14.

On September 4, 2025, the Plaintiff States of Rhode Island and Connecticut filed this lawsuit against Federal Defendants to seek relief from the August 22, 2025 Stop Work Order that directed Revolution Wind "to halt all ongoing activities related to the Revolution Wind Project." *See* Dkt. 21 ("Mot. for Prelim. Inj.") at 13. Plaintiff States' lawsuit alleges that the Stop Work Order is an arbitrary or capricious final agency action lacking the reasoned decision-making required by the Administrative Procedure Act. Compl. ¶¶ 131–53. The lawsuit further alleges that the Stop Work Order is *ultra vires* and contrary to law. Compl. ¶¶ 154–67. The third and final count brought in the States' lawsuit is under the federal Outer Continental Shelf Lands Act ("OCSLA"), which governs the leasing of the Outer Continental Shelf for energy and mineral development. Compl. ¶¶ 168–80. OCSLA authorizes a right of action to compel compliance of the statute against any person, including Federal Defendants. Compl. ¶¶ 169–71.

3

    **B.**    **Ørsted's Lawsuit was Filed on the Same Day in D.D.C.**

On the same day the instant lawsuit was filed in the District of Rhode Island ("D.R.I."), Revolution Wind (a partnership between Danish clean energy company Ørsted and BlackRock), filed its own complaint in D.D.C., seeking a declaratory judgment, injunctive relief including a stay of the Stop Work Order, and other relief. Compl., *Revolution Wind, LLC, v. Burgum*, No. 1:25-cv-02999 (D.D.C. Sep. 4, 2025).

Revolution Wind LLC is a Rhode Island and Connecticut registered foreign corporation from Delaware. R.I. Dep't of State, *Revolution Wind LLC Entity Summary* (Sep. 23, 2025), https://tinyurl.com/344jzwup; Conn. Dep't of State, *Revolution Wind LLC Business Details* (Sep. 23, 2025), https://tinyurl.com/4a3wbjbs. Revolution Wind's offices, as well as the records and documents relating to the Project, are located in Providence, Rhode Island—specifically, at 56 Exchange Terrace in Providence. *Id.*



*Projected view of Revolution Wind Project from Rhode Island coastline*

    **C.**    **The Federal Defendants Have Offices Located in the D.D.C.**

The Defendants are the Secretary of the Interior and other individual federal defendants, and federal agencies like the Department of the Interior, including the Bureau of Ocean Energy Management. All reside in the District of Columbia. Dkt. 22 ("Def. Mot. to Transfer" or "Def. Mot.") at 6. While headquartered in Washington, D.C., Defendants are federal actors with presence throughout the United States, including in Rhode Island. Federal Defendants are represented by the United States Department of Justice, which litigates nationwide.

### D. Federal Defendants' Move to Transfer This Case to the D.D.C.

Federal Defendants have moved to transfer venue under the discretionary statutory factors set forth in 28 U.S.C. § 1404(a). Def. Mot. at 5. In support, the Federal Defendants argue that, because one specific judge in D.D.C. has "familiarity with the Project," the Plaintiff States' choice of venue should be disregarded. *Id.* at 1. Perplexingly, the Federal Defendants also assert that D.D.C. would be familiar with "the issues raised in the States' complaint," *id.*, even though the Plaintiff States have never raised those legal issues before D.D.C.

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). While § 1404(a) is intended to broaden the discretion granted district courts under the common law doctrine of forum non conveniens, the "relevant factors" to be considered remain applicable. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (cleaned up).

"[T]here is a strong presumption in favor of the plaintiff's choice of forum." *Coady*, 223 F.3d at 11. Therefore, the moving party bears the burden of proof. *Id.* Meeting that burden requires a "strong showing." *Blinzler v. Marriott Int'l, Inc.*, 857 F. Supp. 1, 3–4 (D.R.I. 1994) (highlighting that "plaintiff's choice of forum is entitled to "great weight," and denying transfer); *Emissive Energy Corp. v Armament Sys. & Procedures, Inc.*, No. 1:03-cv-00528-L, 2004 U.S. Dist. LEXIS 18437, at *13 (D.R.I. Aug. 2, 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)); *see also* Wright & Miller, Fed. Prac. & Proc. Juris. § 3848 (4th ed.) (cautioning that "a motion to transfer under Section 1404(a) should not be granted lightly," because, under Section 1404(a), the transferor court itself has venue to hear the action, and weakly supported transfer motions only raise litigation expenses and waste judicial resources). "Inconvenience to the defendant is not sufficient to grant § 1404(a) relief, where the transfer would merely shift the inconvenience to the other party." *Brian Jackson & Co. v. Eximias Pharm. Corp.*, 248 F. Supp. 2d 31, 38 (D.R.I. 2003).

When considering a motion to transfer under § 1404(a), courts consider "public-interest factors of systemic integrity and fairness" "in addition to private concerns." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988); *see also McEvily v. Sunbeam-Oster Co.*, 878 F. Supp. 337, 343 (D.R.I. 1994). Included in the analysis are private interest factors such as (1) ease of access to sources of proof; (2) availability of compulsory process to compel attendance of witnesses; (3) cost of attendance of willing witnesses; (4) ease of a view of premises, if appropriate; and (5) all other practical problems of adjudication. *McEvily*, 878 F. Supp. at 343. The public factors include (1) a forum that is at home with the law that must govern the action; (2) avoiding conflict of law or the application of foreign law; (3) "the local interest in having localized controversies

decided at home"; (4) avoiding burdensome jury duty; and (5) "administrative difficulties flowing from court congestion." *Id.* at 344.

### III. ARGUMENT

#### A. **Rhode Island Is the Presumptively Correct Forum for This Matter.**

Rhode Island and Connecticut chose to bring this action to ensure the continuation of a project that secures jobs and clean energy in locations within and adjacent to this district. The interests of justice thus strongly favor allowing Plaintiffs' choice of forum to prevail. *See Coady*, 223 F.3d at 11; *Levinger v. Matthew Stuart & Co.*, Inc., 676 F.Supp. 437, 441–442 (D.R.I. 1988) (holding that where a claim "is directly related to or arises from defendants' conduct in Rhode Island" that "it would manifestly not be in the interest of justice to transfer the case" and denying the motion to transfer). After all, and related to the interests of justice, "[t]he most important of the public interest factors is the local interest in having local controversies decided at home, so that concerned members of the public can engage with the proceedings." *Kinsella v. Bur. of Ocean Energy Mgmt.*, No. CV 22-2147, 2022 WL 16852674, at *2 (D.D.C. Nov. 10, 2022) ("Pursuant to that principle, other courts in this jurisdiction have said that suits involving water rights, environmental regulation, and local wildlife should be resolved in the forum where the people whose rights and interests are in fact most vitally affected are located.") (cleaned up); *see also Seafreeze Shoreside Inc. v. U.S. Dep't of Interior*, No. 21-CV-3276, 2022 WL 3906934, at *4 (D.D.C. June 27, 2022) (similar).[1]

---

[1] Indeed, Federal Defendants cite *Kinsella* and *Seafreeze Shoreside Inc.* in support of their judicial economy arguments. However, these cases recognize local interest as the most important public interest factor. It just so happened that in these cases, both local interest and judicial economy favored transfer.

7

Here, the Federal Defendants' actions are "particularly burdensome" for the Plaintiff States because of their substantial reliance interests in making public policy and public investment decisions that affect thousands of jobs and the health of more than a million people residing in their States. *Relentless Inc.*, 2020 WL 5016923, at *1. The Plaintiff States are at home here or adjacent to this venue, where Revolution Wind has agreements to harness and supply clean energy for the next 20 years, where businesses have sprung up to provide the logistical support necessary to maintain the Project and its employees, "rendering the instant venue more convenient than the District of Columbia." *Id.*

While Rhode Island's connection to D.R.I. is apparent, Connecticut's choice is due no less deference. "[E]ven when the plaintiff is not a resident of a chosen forum, his choice is still entitled to significant weight," *Illinois Nat'l Ins. Co. v. Banc One Acceptance Corp.*, 2008 WL 5423262, at *7 (N.D.N.Y. 2008), and may be evaluated based on factors like economic presence or stake in the chosen venue. *Casana Furniture Co., Ltd. v. Coaster Co. of Am.*, 2009 WL 783399, at *3 (M.D.N.C. 2009) (according deference to plaintiff's venue choice based on business presence); *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 551 (S.D.N.Y. 2008) (giving weight to plaintiff's choice based on location of its operations and witnesses, and suggesting choice would only be disturbed "if the other factors weigh strongly in favor of transfer").

Revolution Wind will be a feature of both the Rhode Island and Connecticut coastlines, and its impact is felt most in the communities abutting the installation, where significant changes to the local coastline have required state and private investment that brings jobs, industry, and clean energy to Rhode Island and Connecticut. Connecticut, like Rhode Island, has invested millions of dollars to support the Project, including redeveloping its State Pier, which Ørsted

8

now leases and is using to construct the Project. Dykes Decl. ¶ 36. Connecticut also will receive significant benefits from the clean electrical energy generated by Revolution Wind when it is completed, just like Rhode Island. *See, e.g.*, Kearns Decl. ¶¶ 4, 7, 34; Dykes Decl. ¶¶ 22, 25, 34. And Connecticut, like Rhode Island, will reap significant secondary economic benefit from Revolution Wind's offshore energy production and from the business activities that have and will spring up to support Revolution Wind in both States. *See, e.g.*, Kearns Decl. ¶¶ 4, 18–20, 27; Dykes Decl. ¶¶ 34–36, 51, 64. The Plaintiff States have therefore appropriately sought a local forum to determine these local issues.

        **B.**      **Revolution Wind's Suit Is Not Identical to This Action and Its Existence Should Not Displace the Plaintiff States' Choice of Venue.**

The "interests of justice" favor Plaintiff States' choice of venue despite the fact that Revolution Wind filed suit challenging the Defendants' unlawful order the same day in a different venue. Despite Federal Defendants' suggestion to the contrary, there is no hard and fast requirement to transfer cases where doing so would reduce litigation overlap or the possibility of inconsistent judgments. Federal Defendants' argument largely relies upon cases applying the principle that a preference should be given to the first-filed of two cases to suggest such a requirement exists, Def. Mot. at 8–9, but this rule does not apply here and does not favor transfer regardless. The presumption—that a later-filed case should be transferred to the venue of the first-filed case—only applies to "identical actions," *see Coady*, 223 F.3d at 11; *Relentless Inc.*, 2020 WL 5016923, at *1 (holding "the first-filed rule does not apply" where "Plaintiffs assert various factual and legal differences"); *Johnson v. VCG Holding Corp.*, 767 F. Supp. 2d 208, 215 (D. Me. 2011) (holding that where there was no suggestion that an *identical* action is pending in a different district, plaintiff's chosen forum had a closer relationship to the dispute); *Little Bay Lobster Co. v. Daley*, No. CIV. 00-007-M, 2001 WL 274797, at *3 (D.N.H. 2001) (holding that

even where cases were "facially similar" to other cases pending, the facts and analysis required to prove the claims "differ[ed] markedly" in any comparison of the cases).[2]

Federal Defendants' first-filed argument fails because the cases here are not identical—most obviously with respect to the parties, but also in facts and legal theories. Indeed, Federal Defendants apparently concede that these cases are not identical, instead describing the cases as "substantially overlapping." Def. Mot. at 8. But this is not the test: overlap does not make the cases identical for the purposes of application of the first-filed doctrine. Revolution Wind, the plaintiff in the D.D.C. action, is a private developer seeking relief for commercial losses based on property interests pursuant to Revolution Wind's lease. In the Rhode Island action, Plaintiffs are sovereign States seeking to protect citizens, protect the environment, and ensure reliable supply of energy so that their citizens can power and heat their homes.[3]

Even if the first-filed rule applied here, which it does not, it would not be treated as an inflexible mandate but rather as "a policy governed by equitable considerations." *SW Indus., Inc. v. Aetna Cas. & Sur. Co.*, 653 F. Supp. 631, 634 (D.R.I. 1987). There is "no magic" in where a

---

[2] Although one of the cases Federal Defendants cite applies the first-filed analysis where the parties were "substantially similar," it is notable that in that case, identical plaintiffs joined multiple lawsuits--easily distinguishable from this case. *Ridenti v. Google LLC*, 530 F. Supp. 3d 164, 168 (D. Mass. 2021) (plaintiffs were "nearly identical proposed classes of Massachusetts residents").

[3] Federal Defendants mischaracterize the legal issues present in each case by arguing denying transfer and instead attempting to add Revolution Wind as a plaintiff could present a claim-splitting issue. Even if permissive joinder would be possible, *see* Fed. R. Civ. P. 20(a)(1), Federal Defendants do not allege, because they cannot allege, that such joinder is required, *see* Fed. R. Civ. P. 19(a)(1). The sole authority, persuasive or otherwise, that Federal Defendants present in support of that proposition that denying transfer would risk claim-splitting is a case where a pro se defendant filed twenty-two complaints, one for each debt collection call he received. *See Laccinole v. Diversified Consultants, Inc.*, No. 1:19-CV-00149-MSM-LDA, 2020 WL 1862969, at *1, 3 (D.R.I. Apr. 14, 2020) (holding that the doctrine of claim splitting is at issue only when a single litigant splits up the same cause of action among separate lawsuits). Federal Defendants' imagined parade of maladies is not realistic where cases differ in claims, evidence, parties, and remedies.

case was first filed and no "reason to bind [plaintiffs] to somebody else's strategic decisions." *Lewis v. Nat'l Football League*, 813 F. Supp. 1, 5 (D.D.C. 1992) (Lamberth, J.) (finding interests of justice indicated the court should retain the case). This is especially true where, as here, the cases were filed on the same day. The case in D.D.C. has not moved significantly ahead simply because a motion for a preliminary injunction was granted. Other equitable considerations here, as discussed below, are intertwined with the holistic § 1404(a) analysis and suggest that D.R.I. is the proper venue. This conclusion is supported by the "strong presumption in favor of the plaintiff's choice of forum," *Relentless*, 2020 WL 5016923, at *1.

This case is on all-fours with *Relentless*. There, owners of a fishing vessel sued the United States Department of Commerce for a permanent injunction and declaratory judgment. 2020 WL 5016923, at *1. Defendants moved to transfer to D.D.C., just as in this case, where they sought to consolidate the case with a second case brought by another entity whose distinct legal claims shared many of the same facts. *Id.* Judge Smith noted that "plaintiffs' choice of forum carrie[d] the day." *Id.* at *1. He rejected Defendants' contention "that consolidation would serve the interests of justice because coordinated proceedings would eliminate the possibility of conflicting orders and unnecessary costs due to the duplication of efforts." *Id.* at *2. This concern was overstated, because, just as is the case here, the second case contained differences of both law and fact. *Id.* at *2.

Finally, Federal Defendants' citation to *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19 (1960) to argue that adjudication in D.D.C. would better serve judicial economy cannot bear the weight they place on it. In *Continental Grain*, the Supreme Court affirmed transfer from a district court in New Orleans to a district court in Memphis where the barge in question sank. *Id.* at 20. In that matter, the case in Memphis had already been tried, and the crucial issues were

11

identical. *Id.* at 26. Here, both cases are equally at preliminary stages and will inevitably require different evidence, yielding much smaller efficiency gains.

>   **C.      Defendants Have Not Made Any Other Strong Showing that Transfer is Appropriate.**

Defendants have not overcome their burden when considering any of the private and public interest factors considered in analyzing a transfer motion under § 1404. Indeed, those factors weigh heavily in favor of denying transfer of this local controversy to the District of Columbia. The Plaintiff States' choice of venue should stand because this venue provides ease of proof, convenient access for witnesses, and vindicates local interests in the subject matter of the action.

>   **1.      Because the Locus of Operative Facts Is in Rhode Island, the Ease of Proof Factor Weighs Against Transfer.**

Defendants' proposed transferee District Court is not the locus of the physical structures, business documents or witnesses at the heart of this litigation. The witnesses required to show Rhode Island's reliance on the federal government's reasoned approval, for example, are either employees of the developers who are operating in Plaintiff States and not Washington, D.C., or employees of the federal government, some of whom have traveled to the forum in the course of regulating the project. In *Blinzler*, the court held that the venue for adjudicating motions to transfer was based on case-by-case consideration of "convenience and fairness" and that the moving party should "clearly specify the key witnesses to be called." 857 F. Supp. at 2. Federal Defendants do not point to any witnesses who would be inconvenienced by offering testimony about a wind farm off the Rhode Island coast and visible from Rhode Island shores. Tellingly, Federal Defendants do not move beyond implied speculation by claiming that transfer to D.D.C. would likely or actually avoid any "undue delay to [the] parties." *Coady*, 223 F.3d at 11.

Federal Defendants' private interests do not favor transfer—the Revolution Wind site itself is more convenient and accessible from Rhode Island than any other venue with a connection to the litigation. *Relentless*, 2020 WL 5016923, at *1 (holding that plaintiffs' inconvenience in having the matter transferred weighed more heavily than defendants'). Here, Rhode Island, Connecticut, *and even* Revolution Wind, LLC witnesses signed their declarations either in the District of Rhode Island or in proximity to the District of Rhode Island. Dkt. 21, Exs. 1 (Providence), 2 (Hartford, Connecticut), 3 ("Rice Decl.") (Providence), 4 (Providence), 5 (Warwick), 6 (Hartford); Rice Decl., Exs. A (Revolution Wind declaration signed in Providence), B (second Revolution Wind declaration signed in Providence).

### 2. The Public Interest Factors Favor the Venue of Rhode Island.

Public interest factors include court congestion, familiarity with governing law, and local interest. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49, 62 n.6 (2013). Analysis of the public interest factors—most notably "the local interest in having localized controversies decided at home"— also suggest that D.R.I. is the proper venue. *See McEvily*, 878 F. Supp. at 343.

#### i. Legal Expertise Is Neutral.

As the D.C. Circuit has observed, "[t]here is certain[l]y no reason why all cases involving the construction or constitutionality of a federal statute should be litigated in the District of Columbia." *Starnes v. McGuire*, 512 F.2d 918, 925 n.7 (D.C. Cir. 1974). Federal courts in Rhode Island routinely adjudicate APA challenges to federal agency action, including offshore fisheries and environmental cases. *See generally, e.g.*, *Ace Lobster Co. v. Evans*, 165 F. Supp. 2d 148 (D.R.I. 2001).

#### ii. Relative Court Congestion Is Neutral.

13

Federal Defendants cite district-level statistics to claim relative docket congestion favors transfer, but this factor is neutral in light of relevant caselaw. Federal Defendants admit that the number of cases in this district is nearly one-tenth the number in Federal Defendants' preferred venue (658 cases in D.R.I. is 12.6% of the 5,243 cases in D.D.C.). Def. Mot. at 10. They then point to a 1.3-month difference in median disposition time for civil cases (7.3 months in D.D.C. versus 8.6 months in D.R.I.). *Id.* But this is not significant, as underlined by the findings of courts across the country.

Generally, "[d]ocket congestion is not given much weight in a § (1404)(a) consideration." *Royal Queentex Enters. v. Sara Lee Corp.*, No. C 99-4787 MJJ, 2000 WL 246599, at *8 (N.D. Cal. Mar. 1, 2000) (quoting *IMS Health, Inc. v. Vality Tech., Inc.*, 59 F. Supp. 2d 454, 471 (E.D. Pa. 1999)). "[T]he case law is clear that only 'substantial[ ]' congestion differences will tip the transfer balance." *Alaska Wilderness League v. Jewell*, 99 F. Supp. 3d 112, 118 (D.D.C. 2015) (alteration in original) (quoting *Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 57 (D.D.C. 2012)); *Relentless*, 2020 WL 5016923, at *1 (denying government's motion to transfer venue to D.D.C. notwithstanding its argument in briefing that D.D.C. resolved cases, in median terms, 4.1 months faster than D.R.I.). "There is no hard-and-fast rule separating trivial from significant differences in congestion, but case law provides some guidance." *Nat'l Wildlife Refuge Ass'n v. U.S. Army Corps of Eng'rs*, No. CV 22-3498 (JDB), 2023 WL 5015292, at *6 (D.D.C. Aug. 7, 2023); *see, e.g.*, *Johnson v. VCG Holding Corp.*, 767 F. Supp. 2d 208, 217 (D. Me. 2011) (docket congestion factor "neutral" where median disposition times differed by a matter of weeks and less than one month); *Alaska Wilderness League*, 99 F. Supp. 3d at 118 (finding difference of nine-tenths of a month was "unconvincing" and not substantial). When viewed in context, the 1.3-month difference Federal Defendants point to is close to the 0.9-month

14

difference found to be neutral in *Alaska Wilderness League*, and it is less than half of the 3.3-month difference found "not . . . especially significant" in *FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 31 (D.D.C. 2008).

### iii. Local Interest Favors Rhode Island

Federal Defendants claim that the local interest in the Rhode Island District Court hearing this matter is "diminished" by the fact that Revolution Wind sued in D.D.C. Def. Mot. at 11 (citing *Stand Up for Calif.! v. U.S. Dep't of Interior*, 919 F. Supp. 2d 51, 65 (D.D.C. 2013)). In *Stand Up for California!*, tribal plaintiffs and community organizations sued the federal government in D.D.C. over a 305-acre parcel in Madera County, California. *Id.* at 54. The government defendants moved to transfer venue to California, and the Court denied transfer. In its decision, the Court noted that certain local interests in Madera County were opposed to the transfer back to California in denying transfer. *Id.* at 65. Unlike that case, there is no such disagreement or animosity between local interests in Rhode Island or Connecticut, and Federal Defendants have provided no evidence of such conflict. In support of the Complaint and Motion for Preliminary Injunction, the States have cited at length the impact of the Revolution Wind project to their residents and economies, and the burgeoning reputation that Rhode Island has cultivated as a clean energy hub. In *Stand Up for California!*, these interests were not aligned because of the tribal issues involved; the opposite is true here. *Id.*

Another operative principle in *Stand Up for California!* is that federal courts taking up administrative law cases concerning real property have regularly determined that there is a "local interest in having localized controversies decided at home." *Oceana v. Bur. of Ocean Energy Mgmt.*, 962 F. Supp. 2d 70, 74 (D.D.C. 2013). In fact, courts in the District of Columbia have routinely transferred APA cases out of D.D.C and to the local forum, reasoning that those

15

controversies should be resolved there. *See, e.g.*, *Sierra Club v. Flowers,* 276 F. Supp. 2d 62, 71 (D.D.C. 2003) (case concerned the use of an abandoned air base in Orange County, California); *Airport Working Grp. of Orange Cnty., Inc. v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 232 (D.D.C. 2002) (case concerned the operation of a dam and reservoir in Colorado).

Federal Defendants do not contest that Rhode Island has a local interest in proceeding in Rhode Island. *See* Def. Mot. at 10 (Federal Defendants conceding the local interest, citing *Gulf Oil v. Gilbert,* 330 U.S. 501, 509 (1947)). Implausibly, they do assert, with no support, that Connecticut "does not have a strong local interest in proceeding in the District of Rhode Island," Def. Mot. at 10–11, despite the fact that Connecticut shares land and marine borders with Rhode Island; will be taking power from the Project; has a capital city a mere 75 miles away from Rhode Island's capital and the seat of the District of Rhode Island (as opposed to the 416 miles separating Hartford from the District of Columbia); and chose to litigate in D.R.I.

Federal Defendants claim that the forum choices of non-parties Revolution Wind and other parties "opposed to the Revolution Wind Project" in the District of Columbia somehow diminish the weight given to the States' choice, *id.* at 11, but these are distinct entities with distinct interests—and different and potentially divergent strategic priorities. That a private developer chose a different forum for different claims should not impact the Court's decision on venue in this litigation.

## IV.     CONCLUSION

For these reasons, the Court should **DENY** Federal Defendants' Motion to Transfer Venue.

Dated: October 1, 2025                                        Respectfully submitted,

| | |
|---|---|
| **PETER F. NERONHA**<br>ATTORNEY GENERAL OF RHODE ISLAND | **WILLIAM TONG**<br>ATTORNEY GENERAL OF CONNECTICUT |
| By: /s/ Sarah W. Rice<br>Katherine Connolly Sadeck (Bar No. 8637)<br>*Solicitor General*<br>Sarah W. Rice (Bar No. 10588)<br>*Assistant Attorney General*<br>Nicholas M. Vaz (Bar No. 9501)<br>*Special Assistant Attorney General*<br>Alex Carnevale (Bar No. 10724)<br>*Special Assistant Attorney General*<br>Leonard Giarrano IV (Bar No. 10731)<br>*Special Assistant Attorney General*<br>Judy M. Shih\* (CA Bar No. 206394)<br>*Special Assistant Attorney General*<br>Maithreyi Ratakonda\* (NY Bar No. 5060124)<br>*Special Assistant Attorney General*<br>Max Jordan Kober\* (NY Bar No. 5911409)<br>*Special Assistant Attorney General*<br>150 South Main Street<br>Providence, RI 02903<br>Tel.: (401) 274-4400<br>ksadeck@riag.ri.gov<br>srice@riag.ri.gov<br>nvaz@riag.ri.gov<br>acarnevale@riag.ri.gov<br>lgiarrano@riag.ri.gov<br>judy@statesunited.org<br>mai@statesunited.org<br>max@statesunited.org<br><br>*Counsel for the State of Rhode Island* | By: /s/ Evan O'Roark<br>Michael K. Skold\* (CT Bar No. ct28407)<br>*Solicitor General*<br>Matthew I. Levine\* (CT Bar No. ct18898)<br>*Deputy Associate Attorney General*<br>Evan O'Roark\* (CT Bar No. ct30562)<br>*Deputy Solicitor General*<br>Benjamin Cheney\* (CT Bar No. ct29685)<br>*Assistant Attorney General*<br>165 Capitol Avenue<br>Hartford, CT 06106<br>Tel.: (860) 808-5316<br>michael.skold@ct.gov<br>matthew.levine@ct.gov<br>evan.oroark@ct.gov<br>benjamin.cheney@ct.gov<br><br>*Counsel for the State of Connecticut and Katherine Dykes* |

### CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2025, I electronically filed the foregoing opposition using the CM/ECF electronic filing system, thereby causing it to be electronically transmitted to counsel for all parties of record.

*/s/ Sarah W. Rice*
