**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF RHODE ISLAND, et al., <br><br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR, et al., <br><br> Defendants. | <br><br><br><br><br><br><br> Case No. 1:25-cv-00439-MSM-PAS |

**REPLY IN SUPPORT OF FEDERAL DEFENDANTS'
MOTION TO TRANSFER VENUE**

## INTRODUCTION

This case should be transferred to the U.S. District Court for the District of Columbia ("D.D.C."), where four related cases are pending—one brought by Revolution Wind itself and asserting largely the same claims and seeking the same relief the States seek here. Judicial economy and avoiding inconsistent judgments strongly favor transfer. The States' arguments to the contrary fail to meaningfully engage with their complaint and Revolution Wind's complaint. Indeed, the States do not engage at all with (let alone dispute) the potential for inconsistent judgments or the problems those inconsistent judgments could present for the Department of the Interior and Revolution Wind. To the extent that ease of access to sources of proof and convenience of witnesses are relevant, those considerations favor transfer to D.D.C. And the States' choice of forum, while an important consideration, does not control. "[T]he weight accorded to a plaintiff's choice of forum varies with the circumstances of the case," and as established in Federal Defendants' motion, the circumstances of this case warrant transfer. *Johnson v. N.Y. Life Ins. Co.*, No. 12-11026-MLW, 2013 WL 1003432, at *3 (D. Mass. Mar. 14, 2013).

## ARGUMENT

The States do not dispute that this case could have been brought in D.D.C. Rather, they argue that transfer would not serve "the convenience of parties and witnesses" or be "in the interest of justice[.]" 28 U.S.C. § 1404(a). These arguments significantly undersell the inefficiency and risk of conflicting judgments inherent in proceeding in this district, ignore record-review principles, and place too much weight on the States' choice of forum.

I.    **The Public Interest Factors Favor Transfer.**

   A.    **Judicial Economy and the Risk of Inconsistent Judgments Favor Transfer.**

The interests of judicial economy, conserving party resources, and avoiding inconsistent judgments heavily favor transfer to D.D.C.  Fed. Defs.' Mot. to Transfer Venue 7-10, Dkt. No. 22 (Fed. Defs.' Mot.).  The States' claims overlap nearly entirely with those Revolution Wind asserts in D.D.C.:

| States' Complaint, Dkt. No. 1 | Revolution Wind's Complaint, *Revolution Wind* Dkt. No. 1 |
|---|---|
| Count 1: The Order was arbitrary & capricious because it:<br>• On its face did not provide sufficient explanation. ¶¶ 141-143.<br>• Presents an unexplained change in position from BOEM's prior approval of the Project. ¶ 144.<br>• Presents an unexplained change in position from prior positions expressed in litigation. ¶ 145.<br>• Is inconsistent with federal energy policy and federal treatment of "fossil fuel projects." ¶ 145.<br>• Did not consider Revolution Wind's reliance interests. ¶ 146.<br>• Did not consider the States' reliance interests. ¶¶ 145-151. | Claim 1: The Order was arbitrary & capricious because it:<br>• On its face did not provide sufficient explanation. ¶¶ 165-166.<br>• Presents an unexplained change in position from BOEM's prior approval of the Project. ¶¶ 167-168.<br>• Presents an unexplained change in position from prior positions expressed in litigation. ¶¶ 169, 173.<br>• Does not treat Revolution Wind similarly to oil and gas development. ¶¶ 176-179.<br>• Did not consider Revolution Wind's reliance interests. ¶¶ 170-173.<br>• Was counter to the evidence before the agency regarding national security and conflicting uses. ¶ 173.<br>• Was pretextual. ¶¶ 174-175 |
| Count 2:<br>• BOEM lacked statutory or regulatory authority to issue the Order.  ¶¶ 158-163<br>• The Order violates OCSLA's mandate to promote "expeditious and orderly development" of the OCS. ¶ 164 | Claim 2:<br>• BOEM lacked statutory or regulatory authority to issue the Order. ¶¶ 189-190. |
| Count 3:<br>• BOEM did not follow necessary process, specifically pointing to 43 U.S.C. § 1334(a)(1) and 30 C.F.R. § 585.417 in their complaint. ¶¶ 177-178. | Claim 3:<br>• BOEM did not follow necessary process, specifically pointing to 30 C.F.R. § 585.106 in its complaint. ¶¶ 195-199. |

| | |
|---|---|
| | • 43 U.S.C. § 1334(a)(1) and 30 C.F.R. § 585.417 were also raised during proceedings on Revolution Wind's motion for a preliminary injunction. *See* Revolution Wind PI Mot. 28-31; [1] Revolution Wind PI Reply 6; [2] Sept. 22, 2025 Tr. of Prelim. Inj. Hr'g 10:23-11:7, 19:19-20:5 (attached for convenience). |
| — | Claim 4: • BOEM's issuance of the Order violated Revolution Wind's due process rights. ¶¶ 201-208. |

Revolution Wind and the States also seek the same relief—declaratory relief and vacatur of the stop work order issued to Revolution Wind. Compl., 42, Prayer for Relief, Dkt. No. 1; Compl. for Declaratory & Injunctive Relief, 63-64, Prayer for Relief, *Revolution Wind, LLC v. Burgum*, No. 1:25-cv-02999-RCL (D.D.C. Sept. 4, 2025), Dkt. No. 1. The two complaints present effectively the same case to two different district courts in two different circuits.

Given the nearly complete overlap between the States' and Revolution Winds' claims and D.D.C.'s familiarity with the above issues, proceeding with the States' claims in this Court would "lead[] to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. FBL-585*, 364 U.S. 19, 26 (1960). And because both suits seek vacatur and declaratory relief regarding the same order issued to Revolution Wind—not the States—proceeding here risks exposing Federal Defendants to inconsistent judgments on the same BOEM Order issued to a private party. These factors thus "weigh heavily in favor of transferring this action" to D.D.C. *Ridenti v. Google LLC*, 530 F. Supp. 3d 164, 168 (D. Mass. 2021). That is especially the

---

[1] Statement of P. & A. in Supp. of Pl.'s Mot. for Prelim. Inj. & Stay Pending Review, *Revolution Wind* Dkt. No. 9.
[2] Pl.'s Reply in Supp. of Mot. for Prelim. Inj. & Stay Pending Review, *Revolution Wind* Dkt. No. 30.

case now that the States insist on briefing their motion for preliminary injunctive relief in this Court despite the fact that D.D.C. has already preliminarily enjoined the BOEM Order. *See* Pl. States' Obj. to Defs.' Mot to Hold Pls.' Mot. for a Prelim. Inj. in Abeyance or For an Extension of Time, Dkt. No. 29.

To underscore the point, consider a hypothetical in which the two cases remain in separate districts. Then suppose Revolution Wind prevails in its suit in D.D.C., with the court entering declaratory relief pronouncing the BOEM Order as having been arbitrarily issued and remanding the Order to BOEM for further consideration. Suppose further that Federal Defendants prevail in the States' case, with this Court issuing a declaratory judgment that the BOEM Order complied with applicable law. Federal Defendants would face two contradictory judgments on the BOEM Order, and the relief gained by Revolution Wind could be undercut by the contrary ruling in the States' suit. The States do not respond to these concerns.

Instead, the States' response focuses primarily on an argument about the first-filed rule that Federal Defendants did not make. The States argue that the rule does not apply and transfer is not warranted because their complaint and Revolution Wind's are not "identical." Pl. States' Opp'n to Fed. Defs.' Mot. to Transfer Venue 10, Dkt. No. 33 ("States' Resp."). But the first-filed rule does not require that suits be identical. *See TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996); *Prime Steakhouse v. Mowi ASA*, No. 2:19-cv-00207-JAW, 2020 WL 1443759, at *10 (D. Me. Mar. 25, 2020). Even so, Federal Defendants did not argue that the first-filed rule requires transfer to D.D.C. Rather, Federal Defendants argued that the *rationale* for favoring transfer to a district with an earlier-filed case supports transferring this case to D.D.C. instead of transferring Revolution Wind's case to Rhode Island. Fed. Defs.' Mot. 8-9. This is due to D.D.C.'s existing familiarity with the Revolution Wind Project, the BOEM Order, and the issues presented

4

by the States' complaint. *Id.* (citing *MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, No. 18-cv-830-JL, 2019 WL 1300860, at *5 (D.N.H. Mar. 21, 2019) (preference for transferring later-filed cases to the district with a first-filed case "involving similar issues and facts" is based on "that court's familiarity with the facts of the case and the applicable law[.]" (internal quotations omitted))).

Judicial economy and the risk of inconsistent judgments are broader than the first-filed rule. *Relentless Inc. v. U.S. Department of Commerce*, No. 20-108 WES, 2020 WL 5016923, at *1-2 (D.R.I. Aug. 25, 2020), on which the States rely heavily, for example, considered application of the first-filed rule separate from judicial economy. As is the case here, marginal differences between parties' claims do not negate the significant inefficiency of having two district courts review the same administrative record and claims, particularly where one court has existing familiarity with the facts and law. *See Kinsella v. Bureau of Ocean Energy Mgmt.*, No. 22-2147, 2022 WL 16852674, at *3 (D.D.C. Nov. 10, 2022) (differences between claims in the District of Columbia and transferee district "d[id] not change the fact that the administrative record will be largely the same in each case," which "weigh[ed] in favor of transfer"). And the degree of overlap between Revolution Wind and the States' complaints is separate still from the fact that they both seek declaratory relief and vacatur of the BOEM Order issued to Revolution Wind, creating an inherent risk of inconsistent judgments.

Beyond stating that their complaint is not identical to Revolution Wind's, the States do little to distinguish the two cases in any way that would justify the inefficiencies of having them proceed in separate districts. Their argument does not contain a single citation to either complaint. States' Resp. 9-12. Rather, the States argue that Revolution Wind "is a private developer seeking relief for commercial losses based on property interests pursuant to Revolution Wind's lease[,]"

while they are "sovereign States seeking to protect citizens, protect the environment, and ensure reliable supply of energy[.]" *Id.* at 10. But it is the claims and relief sought that matter, not the States' subjective motivations in asserting those claims and seeking that relief. Indeed, in opposing Green Ocean's motion to intervene, the States argued there was no daylight between Green Oceans and Federal Defendants because "rather than try to distinguish its litigation objective from that of the federal Defendants', Green Oceans instead trie[d] to distinguish the motivations driving that shared objective." Pl. States' Opp'n to Green Oceans' Mot. to Intervene 7, Dkt. No. 34. While a different context, the principle applies just as well here.

Nor will deciding Revolution Wind and the States' claims' "inevitably require different evidence[.]" States' Resp. 12. Both complaints challenge the same agency action. Judicial review will therefore be based on the same administrative record compiled by BOEM.[3] *See Pres. & Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs.*, Nos. 25-cv-11048-ADB, 25-cv-10910-ADB, 2025 WL 2528380, at \*10 (D. Mass. Sept. 3, 2025). Additionally, to the extent they are not pure legal questions, the States' claims will largely (if not entirely) rely on the same portions of the administrative record as Revolution Wind's claims given the overlap illustrated above. There is no need to require both D.D.C. and this Court to examine and become familiar with the same record.

---

[3] The States' third claim is framed as being brought under the citizen suit provision of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1349. Even if the claim is properly under that provision, there is a "strong presumption . . . that when a statute provides for judicial review but does not specify any standard for that review, it should be construed to include the APA standard." *Citizen Potawatomi Nation v. Salazar*, 624 F. Supp. 2d 103, 108-09 (D.D.C. 2009); *see also United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963) ("Indeed, in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, this Court has held that consideration is to be confined to the administrative record and that no de novo proceeding may be held.").

Thus, contrary to the States' assertion, the *rationale* behind the first-filed rule *does* apply here and support transfer to D.D.C. *See Villa v. Salazar*, 933 F. Supp. 2d 50, 56 (D.D.C. 2013) (finding that, where case "involve[d] a lengthy factual history and a complicated statutory and regulatory scheme that the transferee district ha[d] begun dissecting, the interest of justice favor[ed] transfer"). Judge Lamberth in D.D.C. has existing familiarity with the relevant facts and the statutory and regulatory scheme governing the States' claims. *See* Fed. Defs.' Mot. 4-5, 8-9. It is not "perplexing[]," States' Resp. 5, why D.D.C. would be familiar with the issues presented in the States' complaint—the great majority were raised in connection with Revolution Wind's preliminary injunction motion. *See supra* pp. 2-3; Revolution Wind PI Mot. 18-32; Revolution Wind PI Reply 4-15; Sept. 22, 2025 Tr. of Prelim. Inj. Hr'g. Further, the foundation for the States' irreparable harm arguments in moving for a preliminary injunction is the declarations Revolution Wind submitted in conjunction with its own preliminary injunction motion in D.D.C. *See* Mot. for Prelim. Inj. 32, Dkt. No. 21; Ex. 3 to Mot. for Prelim. Inj., Dkt. No. 21-3 (attaching Revolution Wind's declarations).[4]

The States' argument that completed preliminary injunction proceedings in Revolution Wind's case do not favor transfer is unsupported and ignores caselaw to the contrary. *See* States' Resp. 11; *Kinsella*, 2022 WL 16852674, at *3; *Stand Up for California! v. U.S. Dep't of the Interior*, 919 F. Supp. 2d 51, 65 n.16 (D.D.C. 2013). And the States entirely fail to address the cases in D.D.C. challenging the agency approval for the Revolution Project from which the States now

---

[4] This Court is, of course, as competent as D.D.C. to decide issues of federal law, and Federal Defendants are not arguing to the contrary. Rather, Federal Defendants' argument is that it would be greatly inefficient from a judicial economy standpoint to require this Court to become familiar with facts and law that D.D.C. has already become familiar with.

allege BOEM has unlawfully changed position.  *See* Fed Defs.' Mot. 2-3, 9.  This case belongs in D.D.C. with the rest of the Revolution Wind cases.

      *Relentless* does not warrant reaching a different result.  *See* States' Resp. at 11.  The court there found that "judicial economy would not be greatly served by transfer[]" to D.D.C., where a related suit was pending, because the cases "seemingly contain[ed] differences of both law and fact[.]"  *Relentless*, 2020 WL 5016923, at \*2.  But *Relentless* offers little explanation of the legal and factual differences on which the court was focused or how those differences intersected with judicial economy concerns.  *Id.*  The States' bald assertion that *Relentless* is directly applicable here because of unspecified "differences of both law and fact" between their and Revolution Wind's complaints does nothing to bridge the analytical gap.  States' Resp. at 11.  Two other factors also distinguish *Relentless*.  The transferee district was not home to completed parallel preliminary injunction proceedings.  *See* Dkt., *Loper Bright Enters. v. U.S. Dep't of Commerce*, 1:25-cv-439 (D.D.C.).  And there was no indication of any other pending related cases in the transferee district in addition to *Loper Bright*.  Here, the cases challenging approval of Revolution Wind's Construction and Operations Plan are also relevant.  *See* Fed. Defs.' Mot. 1-2, 9.  Thus, considerations relevant to judicial economy present in this case were not present in *Relentless*.  Ultimately, the transfer analysis requires an "individualized, case-by-case consideration of convenience and fairness."  *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  Here, "the overwhelming similarities" in the States' and Revolution Winds' claims and requested relief, *Wiley v. Gerber Prods. Co.*, 667 F. Supp. 2d 171, 173 (D. Mass. 2009), the potential for inconsistent judgments, D.D.C.'s existing familiarity with the facts and law, and the additional factors discussed below warrant transfer.

**B.** **Local Interest in This Action Does Not Outweigh Other Factors Favoring Transfer.**

The public interest "in having localized controversies decided at home," *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947), does not outweigh the judicial economy concerns and risk of inconsistent judgments discussed above. While the interest in deciding localized controversies at home is an important factor, it is not the end-all-be-all of the transfer inquiry. *See, e.g.*, *Stand Up for California!*, 919 F. Supp. 2d at 64. That interest must be considered in conjunction with other factors like efficiency and the risk of inconsistent judgments. *Id.* at 65 n.16. And where interested parties have filed suit is also a consideration in assessing the strength of a local interest argument.[5] *Id.* at 65.

Here, Revolution Wind has sued in D.D.C., as have parties opposing the Project. Fed. Defs.' Mot. 2-5, 10-11. Revolution Wind is the directly regulated party developing the Revolution Wind Project, and presumably has the strongest interest in whether its Project is allowed to move forward. That Revolution Wind moved for a preliminary injunction a week and a half before the States, citing alleged existential business threats, would seem to confirm that presumption. *See* Revolution Wind PI Mot. 37-38; Mot. for Prelim. Inj., Dkt. No. 21. Thus, considered with the fact that opponents of the Revolution Project have thus far all sued in D.D.C., the local interest in proceeding in this Court is somewhat diminished.

The States minimize this consideration by arguing "[t]hat a private developer chose a different forum for different claims should not impact the Court's decision on venue[.]" States' Resp. 16. But that "private developer," Revolution Wind, is the party to whom BOEM issued the stop

---

[5] This is the concept for which Federal Defendants cited *Stand Up for California!*. *See* Fed. Defs.' Mot. 11. It is not clear what "disagreement or animosity between local interests" the States see in *Stand Up for California!* and discuss in their response. States' Resp. 15.

work order the States challenge.  And Revolution Wind did not choose "a different forum for different claims"—it chose a different forum for largely the same claims and same requested relief, which is the source of the concerns discussed above.  *See supra* pp. 2-3.  Those considerations warrant transfer.  And while the States reference "different and potentially divergent strategic priorities," States' Resp. 16, the States' alleged interests in Revolution Wind's project are ultimately and inherently dependent on the choices of Revolution Wind.  There is no reason to think that the States would be unable to advocate for their alleged separate interests in D.D.C.  The public interest factors favor transfer.

## II.  The Private Interest Factors Do Not Overcome the Public Interest Factors Favoring Transfer.

The private interest factors also point toward transfer.  To the extent relevant, ease of access to proof and the convenience of witnesses are, at best, neutral.  When judicial review will be based on an administrative record, "neither the convenience of the parties and witnesses nor the ease of access to sources of proof weighs heavily in the [venue] analysis."  *Narragansett Indian Tribe v. Hendrickson*, No. 1:19-cv-00158-MSM-PAS, 2020 WL 65087, at *1 (D.R.I. Jan. 7, 2020) (alteration in original) (quoting *Ysleta del Sur Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 42 (D.D.C. 2010)); *see also Little Bay Lobster Co. v. Daley*, No. CIV. 00-007-M, 2001 WL 274797, at *3 (D.N.H. Jan. 12, 2001) (where "the scope of judicial review is limited to the administrative record … the convenience of witnesses, the availability of process, and the cost of obtaining witnesses are not serious factors").  This is because record review claims are resolved on cross-motions for summary judgment based on the administrative record compiled by the agency, not through discovery and trial.  *Pres. & Fellows of Harvard Coll.*, 2025 WL 2528380, at *10.  The States' response does not address this principle of administrative law, and the cases they rely on—such as *Blinzler v. Mariott Int'l, Inc.*, 857 Supp. 1 (D.R.I. 1964)—are inapplicable.  But even if

10

resolving the States' claims required witness testimony, the decisionmakers with knowledge of what BOEM considered in issuing the Order—the factual underpinning of the States' claims—are in Washington, D.C., not Rhode Island.

The remaining private interest factor, the plaintiff's choice of forum, does not overcome the other factors favoring transfer. While a plaintiff's choice of forum is entitled to substantial weight, transfer is still warranted when other factors "clearly point" toward venue in another forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). For the reasons discussed above, such is the case here. *Levinger v. Matthew Stuart & Co., Inc.*, 676 F. Supp. 437, 441–442 (D.R.I. 1988), is not to the contrary. *See* States' Resp. 7. "[T]he weight accorded to a plaintiff's choice of forum varies with the circumstances of the case[.]" *Johnson*, 2013 WL 1003432, at *3. There was no discussion of any other pending litigation in *Levinger*. *See generally* 676 F. Supp. 437. There were therefore no concerns regarding judicial economy or the risk of inconsistent judgments to counterbalance the plaintiff's choice of forum. *Id.* Unlike *Levinger*, the circumstances of *this* case "clearly point" toward transferring venue to D.D.C. under 28 U.S.C. § 1404(a). *See Piper Aircraft Co.*, 454 U.S. at 255.

## CONCLUSION

For the reasons discussed above and in Federal Defendants' motion, this action should be transferred to the U.S. District Court for the District of Columbia.

October 8, 2025

Respectfully submitted,

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources Division

PETER M. TORSTENSEN, JR.
Deputy Assistant Attorney General
Environment & Natural Resources Division

 s/ Amanda K. Rudat
KRISTOFOR R. SWANSON
(Colo. Bar No. 39378)
AMANDA K. RUDAT
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
(202) 598-1937 (Swanson)
(202) 532-3201 (Rudat)
kristofor.swanson@usdoj.gov
amanda.rudat@usdoj.gov

*Attorneys for Federal Defendants*