# EXHIBIT E

# AGREEMENT BETWEEN
# THE DEPARTMENT OF DEFENSE,
# THE DEPARTMENT OF THE AIR FORCE,
# AND
# REVOLUTION WIND, LLC,
# ADDRESSING THE REVOLUTION OFFSHORE WIND PROJECT
# NEAR RHODE ISLAND AND MASSACHUSETTS

This is an agreement between the Department of Defense (DoD), acting through the Military Aviation and Installation Assurance Siting Clearinghouse, the Department of the Air Force (DAF), acting through the Deputy Assistant Secretary of the Air Force for Installations (SAF/IEI) (collectively, the "DoD Parties"), and Revolution Wind, LLC (Project Owner).  Together, these three (3) entities are referred to as "Parties" and individually as a "Party."  Any reference to "DoD Parties" means all Parties (other than Revolution Wind, LLC), and does not indicate that one Party acts for or on behalf of the other.

This agreement is entered into pursuant to Section 183a of Title 10, United States Code (U.S.C.) and part 211 of Title 32, Code of Federal Regulations (CFR).

The Parties acknowledge that the Secretary of the Interior is responsible for administration of energy development, including identification of locations for leasing and development, on the outer continental shelf (OCS) as designated by the Outer Continental Shelf Lands Act (43 U.S.C. Section 1331 et. seq.).  The Secretary of the Interior, through the Bureau of Ocean Energy Management (BOEM), has issued Project Owner a lease, OCS-A 0486, for the construction and operation of the Revolution Offshore Wind Project.

The Parties acknowledge that part of the Project's turbine array is within the United States territorial waters, and part of the Project's turbine array is more than 12 nautical miles (nm) from shore.  The Parties agree that Federal Aviation Administration (FAA) jurisdiction will apply to the entire project, including the portion extending beyond 12 nm from the shore, pursuant to Executive Order 10854.

Attachments A, *Revolution Offshore Wind Project Structures in Lease Area OCS-A 0486*; B, *Revolution Offshore Wind Project Area Map and Wind Turbine Locations*; and C, *Curtailment Communications Protocol*, are attached to this agreement and made a part hereof.

For good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

1 of 16

AGREEMENT BETWEEN THE DEPARTMENT OF DEFENSE, THE DEPARTMENT OF THE AIR FORCE, AND
REVOLUTION WIND, LLC, ADDRESSING THE DEVELOPMENT OF THE REVOLUTION OFFSHORE WIND PROJECT
NEAR RHODE ISLAND AND MASSACHUSETTS

### SECTION 1.  PURPOSE.

**A. Objective.**  The objective of this agreement is to mitigate any potential adverse impacts on military operations and readiness and to minimize risks to national security while allowing the Revolution Offshore Wind Project (Project), within the BOEM lease area OCS-A 0486, to proceed with development.

**B. De-confliction.**  As the Project was originally filed, its spinning turbine blades would conflict with North American Aerospace Defense Command's (NORAD) operation of the Falmouth, Massachusetts Airport Surveillance Radar 8 (ASR-8).  The Parties have focused on de-conflicting these activities and agree that the terms below will allow the mutual goals of the Parties to be met, including the protection of the radar, which promotes national security, and protection of the National Airspace System, while supporting military readiness.  Additional mitigation, implemented as part of BOEM's approval of the Construction and Operations Plan, will also be sought by the DoD to de-conflict the Project with national defense interests.  Those measures address the following concerns:  1. Coordination between the Project Owner and DoD at-sea operators during construction and operation of the Project; 2. DoD efforts to evaluate and mitigate risk from distributed optical fiber sensing and acoustic monitoring equipment deployed as part of the project; and 3. Evaluation and mitigation of risk related to foreign investment.

### SECTION 2.  DEFINITIONS.

**A. Access.**  Either to enter a physical space or to remotely read, copy, edit, divert, release, alter the state of, or otherwise affect information technology systems (e.g., network, data, security, software, hardware).

**B. Actual Curtailment Hours.**  [RESERVED]

**C. ASN.**  Federal Aviation Administration Aeronautical Study Number.

**D. Banked Hours.**  [RESERVED]

**E. BOEM.**  Bureau of Ocean Energy Management, a technical bureau of the Department of the Interior.

**F. CFIUS.**  Committee on Foreign Investment in the United States.

**G. CFR.**  Code of Federal Regulations.

**H. Curtailment**.  The cessation of wind turbine operations when the wind turbine blades are not spinning and are either fully feathered with brakes applied (0 RPM) or fully feathered (typically less than 1 RPM), with the chosen method depending on both the reason for Curtailment and wind speeds at the time of the Curtailment request.  Specifically, according to information from the manufacturer, the wind turbines can be held at 0 RPM through full feathering of blades and application of brakes in wind speeds up to and including 18 meters per second (m/s) (approximately

2 of 16

AGREEMENT BETWEEN THE DEPARTMENT OF DEFENSE, THE DEPARTMENT OF THE AIR FORCE, AND
REVOLUTION WIND, LLC, ADDRESSING THE DEVELOPMENT OF THE REVOLUTION OFFSHORE WIND PROJECT
NEAR RHODE ISLAND AND MASSACHUSETTS

40 miles per hour).  In wind speeds above 18 m/s, the wind turbine blades will be fully feathered without the application of brakes.

    I.  **DAF.**  The Department of the Air Force, a military department of the United States.

    J.  **Day.**  A calendar day, unless indicated otherwise.

    K. **DoD.**  The Department of Defense, an executive department of the United States.

    L. **FAA.**  Federal Aviation Administration, an agency of the United States Department of Transportation.

    M. **Fiscal Year.**  [RESERVED]

    N.  **Hour.**  [RESERVED]

    O.  **Lease.**  The commercial lease issued by BOEM to the Project Owner for the construction and operation of the Revolution Offshore Wind Project, OCS-A 0486.

    P.  **National Security or Defense Purpose.**  An emergency circumstance where the President of the United States, the Secretary of Defense, or a combatant commander under 10 U.S.C. Section 164 directs a change to the mission of NORAD in support of emergency circumstances.  An emergency circumstance does not include routine changes to the mission of NORAD.  A NORAD air defense event is an emergency circumstance under this definition.

    Q. **Project.**  The Revolution Offshore Wind Project, which will consist of no more than two (2) offshore substations (OSS) and 65 wind turbines identified in Attachment A by turbine ID or by substitute turbine ID submitted in accordance with Sections 3.E.2 and 3.E.3 of this agreement.

    R. **Project Area.**  The location where the Project Owner plans to construct and operate its turbines within BOEM lease area OCS-A 0486, as shown in Attachment B.

    S.  **Project Owner.**  Revolution Wind, LLC, and its successors and assigns.

    T.  **Radar Adverse-impact Management (RAM).**  The technical process designed to minimize the adverse impact of obstruction interference on a radar system.  Involves a visit to the radar site by technicians to adjust applicable radar parameters.

    U. **Siting Clearinghouse.**  The Military Aviation and Installation Assurance Siting Clearinghouse established pursuant to 10 U.S.C. Section 183a.

    V.  **U.S.C.**  United States Code.

3 of 16

AGREEMENT BETWEEN THE DEPARTMENT OF DEFENSE, THE DEPARTMENT OF THE AIR FORCE, AND
REVOLUTION WIND, LLC, ADDRESSING THE DEVELOPMENT OF THE REVOLUTION OFFSHORE WIND PROJECT
NEAR RHODE ISLAND AND MASSACHUSETTS

**SECTION 3. MITIGATION WITH VOLUNTARY CONTRIBUTION.**

    **A. In General.**  This agreement is structured to ensure Project Owner may construct and operate the Project without adversely impacting DoD military operations and readiness.  Project Owner agrees to limit the total number of Project wind turbines to 65 with a maximum height of 873 feet above sea level (ASL).  Project Owner agrees to build no more than two (2) OSS with a maximum height of 228 feet ASL.  Project Owner agrees to restrict the construction of the Project wind turbines and OSS to the specific geographic coordinates listed in Attachment A and Project Area, as shown in Attachment B.  Project Owner shall notify NORAD via email (n-nc.peterson.nj3.mbx.norad-j36r-omb@mail.mil) and DAF via email (SAF.IEI.Encroachment@us.af.mil) when the Project is within 30-60 days of completion (for RAM scheduling purposes) and again when the Project is complete and operational such that the RAM can be accomplished.  Parties agree wind turbine and OSS locations adjusted within 500 feet of the geographic coordinates provided in Attachment A shall not require additional review by the DoD Parties or an amendment to this agreement, as provided by Section 10.A of this agreement.  Project Owner shall notify NORAD and DAF via email addresses above immediately after any new ASNs or structures associated with the Project are filed with the FAA or BOEM that are not listed in Attachment A.

    **B. Impact Analysis during Test Energy Phase.**  [RESERVED]

    **C. Voluntary Contribution.**  Subject to the terms and conditions of this agreement, Project Owner shall pay to DoD, within 10 days of the operational date of the Project, the amount of $80,000.  It is expected that the time gap between the commissioning (including spinning) of the first and last wind turbine is less than a year.  For projects where the expected time gap between commissioning of the first and last wind turbine is three (3) years or greater, the Project Owner shall contribute an additional $80,000 per radar to NORAD toward the execution of the RAM every 3 years until the last wind turbine array is commissioned.  This allows NORAD to manage radar adverse impacts over an extended period of construction DoD will use these funds to offset the cost of measures undertaken by DoD to mitigate adverse impacts of this Project or other energy projects within the meaning of 10 U.S.C. Section 183a on military operations and readiness or to conduct studies of potential measures to mitigate such impacts.  DoD will accept such payment as a voluntary contribution of funds pursuant to 10 U.S.C. Section 183a.  Such voluntary contribution may be in addition to voluntary contributions made by other Project Owners, and such other contributions may be in amounts different from that made by Project Owner.  DoD will accept the voluntary contribution on behalf of the DoD Parties and will transfer the funds to appropriate accounts.  All voluntary contributions shall be paid electronically through Pay.gov.

    1. Project Owner shall use one of the following two methods of making payment:

        a. ACH Debit (preferred).  ACH debit authorizes Pay.gov to request a payment immediately upon processing.  Many institutions use ACH debit blocks as a precaution to prevent accidental withdrawals from unauthorized sources.  In order to ensure the transaction is not blocked, Project Owner will use DoD's specified ID number as an exception for the debits authorized on the Pay.gov site.  The ID for this specific collection is 00008522Z4.

        b. ACH Credit.  ACH Credit is a promise to arrange a payment from the promisor's bank

4 of 16

AGREEMENT BETWEEN THE DEPARTMENT OF DEFENSE, THE DEPARTMENT OF THE AIR FORCE, AND
REVOLUTION WIND, LLC, ADDRESSING THE DEVELOPMENT OF THE REVOLUTION OFFSHORE WIND PROJECT
NEAR RHODE ISLAND AND MASSACHUSETTS

account to the agency being paid.

2. To complete a voluntary contribution transaction:

    a. Visit the Pay.gov website: https://www.pay.gov/public/form/start/579188704.

    b. Fill out the form provided on the site.

    c. Once submitted, print a copy of the confirmation for your records.

3. Data to include on submittal:

    a. Collection Number: 2024RevolutionWindOrsted

    b. Description: $80,000.00

    c. For further assistance, visit Pay.gov Web Help section: https://www.pay.gov/WebHelp/HTML/about.html

DoD Office for voluntary contribution settlement:
WHS Financial Management Directorate
4800 Mark Center Drive
Alexandria, VA 22350
Office: 703-545-0048 / 0028
Email: whs.mc-alex.fmd.mbx.system-division@mail.mil

The DoD Parties agree to provide any information reasonably required by Project Owner to process the payment such that external auditors may verify the payment. Project Owners shall notify the Clearinghouse when the contribution has been transmitted.

**D. Amendment of Applications.** [RESERVED]

**E. Withdrawal of Objections.**

1. The DoD Parties have delivered to the FAA "No Objections with Provisions" for the 24 ASNs corresponding to the wind turbine and OSS locations listed in Attachment A. In addition to the 24 turbines for which there are FAA filings in OE/AAA, there are 43 turbines located beyond 12nm and therefore outside of FAA jurisdiction. The 43 other turbines are also covered by this agreement and are described in Attachments A and B.

2. All Parties agree that, if Project Owner requests to extend the effective period of FAA's Determination of No Hazard to Air Navigation in accordance with 14 CFR Section 77.35, then the DoD Parties will reassess the ASNs for additional mission impacts. If no new mission impacts are identified, DoD Parties will deliver to the FAA "No Objections with Provisions" to such an extension as requested, provided that the affected ASNs are listed on Attachment A (as amended, if applicable, in accordance with Section 10.A), do not exceed the maximum heights specified in Section 3.A, and are located within the siting parameters of the Project Area

5 of 16

AGREEMENT BETWEEN THE DEPARTMENT OF DEFENSE, THE DEPARTMENT OF THE AIR FORCE, AND
REVOLUTION WIND, LLC, ADDRESSING THE DEVELOPMENT OF THE REVOLUTION OFFSHORE WIND PROJECT
NEAR RHODE ISLAND AND MASSACHUSETTS

specified in Attachment B of this agreement or any amendments to this agreement, that the total number of structures for the Project still does not exceed 65 wind turbines and two (2) OSS, and a statement is incorporated into FAA's OE/AAA system referencing this agreement.

    3.  If the Project Owner submits any substitute structures to BOEM within 36 months of the execution of this agreement, the DoD Parties will reassess the substitute structure for additional mission impacts.  If no new mission impacts are identified, DoD Parties will deliver to BOEM written concurrence provided that the affected structures are listed on Attachment A, do not exceed the maximum height specified in Section 3.A, that the substitute structures are located within the siting parameters of the Project Area specified in Attachment B of this agreement or any amendments to this agreement, and that the total number of structures does not exceed 65 wind turbines and two (2) OSS after substitution.

    4.  The DoD Parties agree not to object to the construction and operation of the Project before any federal, state, or local regulatory entity with jurisdiction over the Project (except as provided in sections 5 and 6.B of this agreement), provided that Project Owner is in material compliance with the terms of this agreement and that, as of the effective date of this agreement, Project Owner has disclosed to the DoD Parties in writing all material facts necessary for the DoD Parties to be able to fully assess the Project's potential adverse impacts on military operations and readiness and risks to national security.

    **F.  Other Regulatory Actions.**  This agreement shall not prevent or limit the DoD Parties from communicating in any form with any regulatory body or agency with jurisdiction or possible jurisdiction over matters affecting NORAD and the Falmouth, Massachusetts ASR-8 beyond the Project.

### SECTION 4.  CURTAILMENT.

**A.  Curtailment for Test Purposes.**  [RESERVED]

**B.  Curtailment for Training Purposes.**  [RESERVED]

**C.  Curtailment for a National Security or Defense Purpose.**  Upon request by NORAD, Project Owner agrees to immediately curtail wind turbine operations for a National Security or Defense Purpose utilizing the communication protocol set out in Attachment C.  Such Curtailment may not be requested except for a National Security or Defense Purpose.  Curtailment for a National Security or Defense Purpose will be temporary in nature and extend only so long as is absolutely necessary to meet the discrete, temporary, and stated National Security or Defense Purpose.  This agreement in no way precludes Project Owner from seeking any available legal remedies for any Curtailment associated with a national security emergency other than challenging the Curtailment itself.  Any request for Curtailment under this subsection will be communicated by either DoD Party or applicable NORAD Air Defense Sector (ADS) to Project Owner and will include the releasable portions of the President's, the Secretary's, or the combatant commander's mission order.

**D.  Curtailment for Establishing Baselines.**  [RESERVED]

6 of 16

AGREEMENT BETWEEN THE DEPARTMENT OF DEFENSE, THE DEPARTMENT OF THE AIR FORCE, AND
REVOLUTION WIND, LLC, ADDRESSING THE DEVELOPMENT OF THE REVOLUTION OFFSHORE WIND PROJECT
NEAR RHODE ISLAND AND MASSACHUSETTS

**E. Wear and Tear.**  It is a fundamental premise of this agreement that the limited Curtailment expected to be required from this agreement will not cause excess wear and tear on the Project. Project Owner agrees that it is responsible for any damage or wear and tear to the turbines as a result of Curtailment (as defined in Section 2.H) pursuant to this agreement.

**F. Disclosure of Curtailment Request.**  Project Owner acknowledges that there may be national security considerations associated with any request by NORAD for Curtailment in accordance with the terms of this agreement and any Curtailment resulting therefrom.  Project Owner therefore agrees not to disclose any such request or any Curtailment resulting therefrom, except for disclosure as specified in Section 10.O, without the prior consent of the DAF, and the DAF agrees that consent to disclose to a business entity with which a non-disclosure agreement is in place will not be unreasonably withheld.

### SECTION 5.  PROTECTION OF DEFENSE CAPABILITIES.

It is a priority for the DAF to protect national defense capabilities and military operations, including military installations, research, development, test and evaluation activities, and military readiness activities from compromise and exploitation that may occur due to an activity under foreign control operating in the vicinity of those national defense capabilities and military operations.  Nothing in this agreement shall relieve Project Owner or its successors or assigns from complying with 31 CFR Part 800 and 802 (Mergers, Acquisitions, and Takeovers by Foreign Persons) nor prevent or limit the parties from communicating in any form with the CFIUS.

### SECTION 6.  ASSIGNMENT.

**A. Right to Assign.**  This agreement shall be binding upon the Project Owner and its successors and assigns.  If Project Owner and its successors or assigns (assignors) elect to sell, convey, mortgage, assign, or otherwise transfer all or any part of its interests and obligations in the assets comprising the Project (assignment) to any third party (assignee), assignor shall cause such assignee to expressly acknowledge the existence of this agreement.  The assignor shall provide a copy of this agreement to the assignee.  The assignee shall provide new point of contact information (as in Section 9) to the DoD Parties.

**B. Notice of Assignment to CFIUS.**  If the prospective assignee is a foreign national or foreign-owned or -controlled business entity, assignor and the proposed assignee shall jointly provide notice of the proposed transaction to CFIUS to the extent required by applicable regulations (31 CFR Parts 800 and 802) and provide a copy of the notice to the DoD Parties.  Nothing in this agreement shall prohibit or limit DoD from objecting to the transaction before CFIUS, nor limit communications with CFIUS during national security reviews and investigations, and should mitigation result, during mitigation, tracking, and post-consummation monitoring and enforcement, pursuant to applicable statutes and regulations.

**C. Effect of Assignment.**  Upon an assignment, assignor shall be relieved of any obligations or liabilities under this agreement to the extent that the assignee has assumed in writing such

7 of 16

AGREEMENT BETWEEN THE DEPARTMENT OF DEFENSE, THE DEPARTMENT OF THE AIR FORCE, AND
REVOLUTION WIND, LLC, ADDRESSING THE DEVELOPMENT OF THE REVOLUTION OFFSHORE WIND PROJECT
NEAR RHODE ISLAND AND MASSACHUSETTS

obligations or liabilities and provided that Project Owner has provided a copy of the assignment, including the assumption of obligations and liabilities, to the DoD Parties.

### SECTION 7.  EFFECTIVE DATE AND EXPIRATION.

   **A.  Effective Date.**  This agreement becomes effective on the date when all Parties have signed.

   **B.  Expiration.**  This agreement shall expire and have no further force and effect upon the occurrence of the earlier of the following:

   1.  Termination of the BOEM lease agreement.

   2.  The Project is decommissioned.

   3.  Falmouth, Massachusetts ASR-8 permanently ceases operations.  However, if the current radar is replaced with a radar system that has similar needs for mitigation, then this agreement shall not expire.

   4.  Termination of the agreement by written mutual agreement of the Parties.

   **C.  Actions Prior to Expiration.**  Any activities engaged in by the Parties (including the expenditure of part or all of any voluntary contribution) that occurred prior to expiration of this agreement shall remain valid and continue in effect, notwithstanding the expiration of the agreement.

### SECTION 8.  POINTS OF CONTACT AND NOTIFICATION.

   **A.  Points of Contact (POCs).**  The following persons shall be the primary POCs for the Parties for purposes of this agreement.  Any notice, request, or other communication to be provided pursuant to this agreement shall be delivered to the POCs.  Any Party may change its POC by providing written notification of the change to the other Parties at least 30 days in advance of the change taking effect.

   **1.  DoD.**

      a.  Executive Director, Military Aviation and Installation Assurance Siting Clearinghouse, 3400 Defense Pentagon, Room 5C646, Washington, DC 20301-3400, osd.dod-siting-clearinghouse@mail.mil

      b.  Headquarters NORAD Radar Analysis Branch, 250 Vandenberg Street, Ste B016, Peterson AFB, CO, 80914, n-nc.peterson.nj3.mbx.norad-j36r-omb@mail.mil

   **2.  DAF.**  Director, Air Force Mission Sustainment, Office of the Assistant Secretary of the Air Force for Installations, Environment, and Energy, 1665 Air Force Pentagon, Room 4B941, Washington, DC 20330-1665, SAF.IEI.Encroachment@us.af.mil

8 of 16

AGREEMENT BETWEEN THE DEPARTMENT OF DEFENSE, THE DEPARTMENT OF THE AIR FORCE, AND
REVOLUTION WIND, LLC, ADDRESSING THE DEVELOPMENT OF THE REVOLUTION OFFSHORE WIND PROJECT
NEAR RHODE ISLAND AND MASSACHUSETTS

    **3. Project Owner.** Revolution Wind, LLC, 56 Exchange Terrace, Suite 300, Providence, RI 02903, Attention: Asset Manager; with a copy to Orsted North America Inc., 399 Boylston Street, 12th Floor, Boston, MA 02116, Attention: Legalus_legal_notices@orsted.com

    **B. Notification.** Any written notice required by or provided for in this agreement shall be sent by registered or certified mail, postage prepaid, sent by a nationally recognized overnight delivery service that provides a receipt for delivery, or hand delivered. A notice shall be deemed to be received when delivered to the recipient's address.

## Section 9. Breach and Dispute Resolution.

    If a Party believes that another Party has breached this agreement, it shall provide written notice of the breach within 60 days of discovery of the breach to all other Parties and provide the breaching Party a reasonable opportunity (but in all cases at least 60 days from delivery of such notice) to cure the breach. Failure to provide notice within such 60-day period only waives the rights with respect to the periods from after the expiration of such 60-day period and until the date when the notice was given. If there is a dispute between the involved Parties as to whether a breach occurred, the involved Parties agree to attempt to resolve the dispute beginning with Project Owner and representatives of the DoD Parties. Disputes may be elevated, on the part of the DoD Parties, to the DAF headquarters and then to the Executive Director of the Siting Clearinghouse. If the breach is not cured or resolved after this initial dispute resolution process, any Party may seek to enforce this agreement. Each Party specifically reserves any and all rights or causes of action it may have either at law or in equity to require compliance with any provision of this agreement. Each Party reserves the right to enforce or refrain from enforcing against another Party the terms of this agreement as it sees fit and failure to enforce does not act to excuse future breaches.

## Section 10. General Provisions.

    **A. Amendments.** Any Party to this agreement may request that it be amended, whereupon the Parties agree to consult to consider such amendments. Any amendment to this agreement shall become effective when signed by all of the Parties unless its terms provide for a different effective date. Wind turbine and OSS locations adjusted within 500 feet of the geographic coordinates provided in Attachment A shall not require additional review by the DoD Parties or an amendment to this agreement. However, wind turbine locations adjusted greater than 500 feet of the geographic coordinates provided in Attachment A shall require DoD Parties review, and if approved, will be included in an amendment to this agreement. Amendments only providing substitute structures within the Project boundary, with no change to height or total number of Project structures, need only be signed by the DoD Parties' and Project Owner's designated Project officers if filed with BOEM within 36 months of the effective date of this agreement. Project Owner shall notify NORAD via email (n-nc.peterson.nj3.mbx.norad-j36r-omb@mail.mil) and DAF via email (SAF.IEI.Encroachment@us.af.mil) immediately after any new ASNs or structures associated with the Project are filed with the FAA or BOEM that are not listed in Attachment A.

9 of 16

AGREEMENT BETWEEN THE DEPARTMENT OF DEFENSE, THE DEPARTMENT OF THE AIR FORCE, AND
REVOLUTION WIND, LLC, ADDRESSING THE DEVELOPMENT OF THE REVOLUTION OFFSHORE WIND PROJECT
NEAR RHODE ISLAND AND MASSACHUSETTS

    **B. Integration.**  This agreement contains the entire agreement and understanding between the Parties with respect to all of the subject matter contained herein, thereby merging and superseding all prior agreements and representations by the Parties with respect to such subject matter.

    **C. Governing Law.**  This agreement shall be governed by and construed in accordance with the laws of the United States and the States of Rhode Island and Massachusetts, as may be applicable.

    **D. Interpretation.**  In the event an ambiguity or question of intent or interpretation arises, this agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of authorship of any of the provisions of this agreement.  Any reference to any Federal, state, interstate, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, as they may have been amended from time to time, unless the context requires otherwise.

    **E. Headings and Titles.**  The headings or section titles contained in this agreement are inserted solely for convenience and do not constitute a part of this agreement between the Parties, nor should they be used to aid in any manner in the construction of this agreement.

    **F. Severability.**  If any term, provision, or condition of this agreement is held to be invalid, void, or unenforceable by a governmental authority and such holding is not or cannot be appealed further, then such invalid, void, or unenforceable term, provision, or condition shall be deemed severed from this agreement and all remaining terms, provisions, and conditions of this agreement shall continue in full force and effect.  The Parties shall endeavor in good faith to replace such invalid, void, or unenforceable term, provision, or condition with valid and enforceable terms, provisions, or conditions that achieve the purpose intended by the Parties to the greatest extent permitted by law.

    **G. Waivers; Remedies Cumulative.**  There is no implied waiver of rights under this agreement.  No failure or delay on the part of a Party in exercising any of its rights under this agreement or in insisting upon strict performance of provisions of this agreement, no partial exercise by either Party of any of its rights under this agreement, and no course of dealing between the Parties shall constitute a waiver of the rights of any Party under this agreement, other than the requirement to raise a matter of breach within 30 days of discovery.  Any waiver shall be effective only by a written instrument signed by the Party granting such waiver, and such waiver shall not operate as a waiver of, or estoppel with respect to, any subsequent failure to comply with this agreement.  The remedies provided in this agreement are cumulative and not exclusive of any remedies provided by law.

    **H. Anti-Deficiency.**  For the DoD Parties, this agreement is subject to the availability of appropriated funds and sufficient resources.  No provision in this agreement shall be interpreted to require obligation or payment of funds in violation of the Anti-Deficiency Act, 31 U.S.C. Section 1341.

    **I. Disclosure.**  The Parties may freely disclose this agreement with any person or entity.  DoD will post the agreement on the Siting Clearinghouse website.  Project Owner may mark any part of any document it believes to be proprietary or competition sensitive that it wants DoD or the DAF to

10 of 16

AGREEMENT BETWEEN THE DEPARTMENT OF DEFENSE, THE DEPARTMENT OF THE AIR FORCE, AND
REVOLUTION WIND, LLC, ADDRESSING THE DEVELOPMENT OF THE REVOLUTION OFFSHORE WIND PROJECT
NEAR RHODE ISLAND AND MASSACHUSETTS

exempt from disclosure.  The DoD Parties will only disclose any such marked information in accordance with the provisions of 5 U.S.C. Section 552 (the Freedom of Information Act).

    **J.  No Third-Party Beneficiaries.**  Nothing in this agreement, express or implied, is intended to give to, or shall be construed to confer upon, any person not a Party any remedy or claim under or by reason of this agreement.  This agreement shall be for the sole and exclusive benefit of the Parties and their respective successors and assigns.

    **K.  Full and Complete Satisfaction.**  The completion of the obligations of each of the Parties under this agreement constitute the full and complete satisfaction of those obligations.

    **L.  Other Federal Agencies.**  This agreement does not bind any Federal agency, other than the DoD Parties, nor waive required compliance with any law or regulation.

    **M. Completion of Construction.**  Within 60 days of the completion of construction of the Project, Project Owner shall deliver to DoD final coordinates for each turbine erected.

    **N.  Grid Operator Protocols.**  Project Owner shall disclose this Curtailment requirement to the grid operator and shall comply with the mitigation agreement's curtailment provisions, including requesting waivers from the grid operator if grid protocols would interfere with this mitigation agreement.  If Curtailment for a National Security or Defense Purpose is requested by NORAD, the Project Owner shall notify the following of the request: the ISO-NW, Inc.; and the Narragansett Electric Company d/b/a Rhode Island Energy.

[*Continued on the following page*]

11 of 16

AGREEMENT BETWEEN THE DEPARTMENT OF DEFENSE, THE DEPARTMENT OF THE AIR FORCE, AND
REVOLUTION WIND, LLC, ADDRESSING THE DEVELOPMENT OF THE REVOLUTION OFFSHORE WIND PROJECT
NEAR RHODE ISLAND AND MASSACHUSETTS

**O. Signature/Counterparts.** The Parties represent and warrant that the signatories below have authority to sign on behalf of and bind each respective Party, and that no other signature is required to bind that Party. This agreement may be executed in several counterparts, each of which shall be deemed an original, all of which shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the Parties have executed and delivered this agreement.

**FOR THE DEPARTMENT OF DEFENSE**

OWENS.BRENDAN.M.1030451844
Digitally signed by OWENS.BRENDAN.M.1030451844
Date: 2024.11.04 21:38:40 -05'00'

11/4/24

Brendan M. Owens                                Date
Assistant Secretary of Defense for
Energy, Installations, and Environment

**FOR THE DEPARTMENT OF THE AIR FORCE**

MORIARTY.ROBERT.E.1013267584
Digitally signed by MORIARTY.ROBERT.E.1013267584
Date: 2024.10.04 16:23:09 -04'00'

10/4/24

ROBERT E. MORIARTY, P.E., SES              Date
Deputy Assistant Secretary of the Air Force
(Installations)

**FOR REVOLUTION WIND, LLC**

KELIN
Digitally signed by KELIN
Date: 2024.09.26 12:37:32 -04'00'

9/26/24

Kellen Ingalls                                  Date
Authorized Person

RYACH
Digitally signed by: RYACH
DN: CN = RYACH email = RYACH@orsted.com
OU = DE-PROD.DK, BRUGERE, Commercial
Date: 2024.10.01 15:32:30 -04'00'

10/1/24

Ryan Chaytors                                   Date
Authorized Person

12 of 16

## ATTACHMENT A
Revolution Offshore Wind Project Structures in Lease Area OCS-A 0486

Coordinate Reference System NAD83 (2011)

| ASN | Turbine ID | US Coast Guard Turbine ID | Str. Type | Maximum Height (ASL) | Latitude | Longitude |
|---|---|---|---|---|---|---|
| | B07 | AE06 | Wind Turbine | 787' | 41.2259 | -71.1728 |
| | B08 | AE07 | Wind Turbine | 787' | 41.2263 | -71.1508 |
| | B09 | AE08 | Wind Turbine | 787' | 41.2267 | -71.1286 |
| | B10 | AE09 | Wind Turbine | 787' | 41.2271 | -71.1066 |
| 2021-WTE-2881-OE | B11 | AE10 | Wind Turbine | 873' | 41.2275 | -71.0847 |
| 2021-WTE-2882-OE | B12 | AE11 | Wind Turbine | 873' | 41.2279 | -71.0627 |
| | B13 | AF05 | Wind Turbine | 787' | 41.2088 | -71.1941 |
| | B14 | AF06 | Wind Turbine | 787' | 41.2092 | -71.1723 |
| | B15 | AF09 | Wind Turbine | 787' | 41.2105 | -71.1063 |
| 2021-WTE-2884-OE | B16 | AF10 | Wind Turbine | 873' | 41.2109 | -71.0842 |
| 2023-WTE-7639-OE | B17 | AF11 | Wind Turbine | 787' | 41.2113 | -71.0623 |
| | B18 | AG04 | Wind Turbine | 787' | 41.1917 | -71.2157 |
| | B19 | AG05 | Wind Turbine | 787' | 41.1922 | -71.1937 |
| | B20 | AG06 | Wind Turbine | 787' | 41.1926 | -71.1717 |
| | B21 | AG07 | Wind Turbine | 787' | 41.1930 | -71.1497 |
| | B22 | AG08 | Wind Turbine | 787' | 41.1934 | -71.1277 |
| | B23 | AG09 | Wind Turbine | 787' | 41.1938 | -71.1060 |
| | B24 | AH04 | Wind Turbine | 787' | 41.1751 | -71.2153 |
| | B25 | AH05 | Wind Turbine | 787' | 41.1755 | -71.1932 |
| | B26 | AH06 | Wind Turbine | 787' | 41.1758 | -71.1713 |
| | B27 | AH07 | Wind Turbine | 787' | 41.1764 | -71.1491 |
| | B28 | AH08 | Wind Turbine | 787' | 41.1768 | -71.1270 |
| | B29 | AH09 | Wind Turbine | 787' | 41.1772 | -71.1051 |
| | B30 | AJ02 | Wind Turbine | 787' | 41.1575 | -71.2588 |
| | B31 | AJ03 | Wind Turbine | 787' | 41.1578 | -71.2369 |
| | B32 | AJ04 | Wind Turbine | 787' | 41.1584 | -71.2149 |
| | B33 | AJ05 | Wind Turbine | 787' | 41.1588 | -71.1913 |
| | B34 | AJ06 | Wind Turbine | 787' | 41.1594 | -71.1707 |
| | B35 | AJ07 | Wind Turbine | 787' | 41.1596 | -71.1487 |
| | B36 | AJ08 | Wind Turbine | 787' | 41.1601 | -71.1269 |
| | B37 | AJ09 | Wind Turbine | 787' | 41.1605 | -71.1053 |
| | B38 | AJ10 | Wind Turbine | 787' | 41.1606 | -71.0825 |
| 2021-WTE-2889-OE | B39 | AJ11 | Wind Turbine | 873' | 41.1612 | -71.0603 |
| 2021-WTE-2890-OE | B40 | AJ12 | Wind Turbine | 873' | 41.1616 | -71.0383 |
| 2023-WTE-7640-OE | B41 | AJ13 | Wind Turbine | 787' | 41.1623 | -71.0159 |
| 2021-WTE-2892-OE | B42 | AJ14 | Wind Turbine | 873' | 41.1625 | -70.9942 |
| 2023-WTE-7641-OE | B43 | AJ15 | Wind Turbine | 787' | 41.1626 | -70.9728 |
| | B46 | AK10 | Wind Turbine | 787' | 41.1442 | -71.0823 |

13 of 16

| ASN | Turbine ID | US Coast Guard Turbine ID | Str. Type | Maximum Height (ASL) | Latitude | Longitude |
|---|---|---|---|---|---|---|
| 2021-WTE-2894-OE | B47 | AK12 | Wind Turbine | 873' | 41.1450 | -71.0377 |
|  | B50 | AL10 | Wind Turbine | 787' | 41.1275 | -71.0807 |
|  | B51 | AL12 | Wind Turbine | 787' | 41.1275 | -71.0371 |
| 2021-WTE-2900-OE | B55 | AL18 | Wind Turbine | 873' | 41.1306 | -70.9050 |
| 2021-WTE-2901-OE | B56 | AL19 | Wind Turbine | 873' | 41.1309 | -70.8828 |
| 2021-WTE-2902-OE | B57 | AL20 | Wind Turbine | 873' | 41.1313 | -70.8609 |
| 2023-WTE-7642-OE | B58 | AL21 | Wind Turbine | 787' | 41.1314 | -70.8398 |
|  | B59 | AM11 | Wind Turbine | 787' | 41.1111 | -71.0591 |
|  | B60 | AM12 | Wind Turbine | 787' | 41.1113 | -71.0375 |
| 2023-WTE-7643-OE | B61 | AM14 | Wind Turbine | 787' | 41.1117 | -70.9928 |
| 2023-WTE-7644-OE | B63 | AM17 | Wind Turbine | 787' | 41.1133 | -70.9269 |
| 2021-WTE-2908-OE | B64 | AM18 | Wind Turbine | 873' | 41.1139 | -70.9045 |
| 2021-WTE-2909-OE | B65 | AM19 | Wind Turbine | 873' | 41.1144 | -70.8823 |
| 2021-WTE-2910-OE | B66 | AM20 | Wind Turbine | 873' | 41.1146 | -70.8604 |
| 2023-WTE-7645-OE | B67 | AM21 | Wind Turbine | 787' | 41.1151 | -70.8387 |
|  | B68 | AN11 | Wind Turbine | 787' | 41.0944 | -71.0583 |
|  | B69 | AN12 | Wind Turbine | 787' | 41.0951 | -71.0353 |
|  | B70 | AN13 | Wind Turbine | 787' | 41.0946 | -71.0139 |
| 2023-WTE-7646-OE | B71 | AN14 | Wind Turbine | 787' | 41.0967 | -70.9923 |
| 2021-WTE-2914-OE | B72 | AN15 | Wind Turbine | 873' | 41.0960 | -70.9704 |
| 2023-WTE-7647-OE | B73 | AN16 | Wind Turbine | 787' | 41.0965 | -70.9485 |
|  | B74 | AP11 | Wind Turbine | 787' | 41.0778 | -71.0580 |
|  | B75 | AP12 | Wind Turbine | 787' | 41.0783 | -71.0357 |
|  | B76 | AP13 | Wind Turbine | 787' | 41.0788 | -71.0146 |
|  | B77 | AP14 | Wind Turbine | 787' | 41.0791 | -70.9904 |
|  | B78 | AP15 | Wind Turbine | 787' | 41.0794 | -70.9697 |
| 2021-WTE-2918-OE | B79 | AP16 | Wind Turbine | 873' | 41.0798 | -70.9476 |
|  | B44 | AK08 | Wind Turbine (Alternate) | 787' | 41.1436 | -71.1260 |
|  | B45 | AK09 | Wind Turbine (Alternate) | 787' | 41.1437 | -71.1031 |
|  | Z01 | AL11 | Offshore Substation | 228' | 41.1278 | -71.0592 |
|  | Z02 | AF08 | Offshore Substation | 228' | 41.2101 | -71.1284 |

14 of 16

**ATTACHMENT B**
Revolution Offshore Wind Project Area Map
and Wind Turbine Locations



15 of 16

AGREEMENT BETWEEN THE DEPARTMENT OF DEFENSE, THE DEPARTMENT OF THE AIR FORCE, AND
REVOLUTION WIND, LLC, ADDRESSING THE DEVELOPMENT OF THE REVOLUTION OFFSHORE WIND PROJECT
NEAR RHODE ISLAND AND MASSACHUSETTS

# ATTACHMENT C
Curtailment Communications Protocol

**Section 1.  Notices**.  The following persons shall be the primary points of contact ("POCs") for the Parties for purposes of administering this agreement.  Any Party may change its POC by providing written notification of the change to the other Parties at least 30 days in advance of the change taking effect.

   **A.  DoD.**

      1.  Executive Director, Military Aviation and Installation Assurance Siting Clearinghouse, 3400 Defense Pentagon, Room 5C646, Washington, DC 20301-3400, osd.dod-siting-clearinghouse@mail.mil

      2.  Headquarters NORAD Radar Analysis Branch, 250 Vandenberg Street, Ste B016, Peterson AFB, CO, 80914, n-nc.peterson.nj3.mbx.norad-j36r-omb@mail.mil

   **B.  DAF.**  Director, Air Force Mission Sustainment, Office of the Assistant Secretary of the Air Force for Installations, Environment, and Energy, 1665 Air Force Pentagon, Room 4B941, Washington, DC  20330-1665, SAF.IEI.Encroachment@us.af.mil

   **C.  Project Owner.**  Revolution Wind, LLC, 56 Exchange Terrace, Suite 300, Providence, RI 02903, Attention: us_legal_notices@orsted.com

**Section 2.  Criteria for Curtailment**.  The Parties agree that the following protocol will be used for communication between Project Owner and NORAD in the event curtailment of wind turbine operations will occur under circumstances delineated in Section 4 of the main agreement.

**Section 3.  Communications Protocol for a National Security or Defense Purpose.**
   Under circumstances described in Section 4.C of the main agreement, the applicable NORAD ADS will call the Project operations center at 401-223-2380 and request immediate curtailment. Advance notification is unlikely due to the unpredictable and dynamic nature of NORAD air defense events.  If the wind speeds are up to and including 18 meters per second (m/s) (approximately 40 miles per hour) at the time of curtailment request, the wind turbine blades will be fully feathered with brakes applied (0 RPM).  If the wind speeds are above 18 m/s at the time of curtailment request, the wind turbine blades will be fully feathered without the application of brakes.  At any time during curtailment, if the wind speeds drop to 18 m/s or below, brakes will be applied to create a 0 RPM condition. If wind speeds subsequently exceed 18 m/s, brakes may be released on the fully feathered blades.  The goal during NORAD curtailment is to create a 0 RPM condition to the maximum extent practical for the maximum amount of time.  The applicable NORAD ADS will call the Project operations center as soon as possible after the air defense event is terminated and curtailment is no longer required.

   If the Project operations center has not been notified by NORAD after 1 hour of fully feathered with brakes applied (0 RPM) Curtailment, the operations center is authorized to transition to fully feathered (less than 1 RPM) Curtailment until contacted by NORAD to confirm Curtailment is no longer required.